ELIZA FINLEY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

February 7, 1898.

Nos. 10,855—(236).

| 71 | 471' |
|----|----|
| 82 | 122 |
| 71 | 471 |
| f84 | 27 |
| 84 | 28 |
| 71 | 471 |
| 86 | 375 |

**Railway—Grade Crossing—Failure to Ring Bell—Sufficiency of Evidence.**

In an action for damages for injuries alleged to have been caused by defendant's negligence, resulting in the collision at a highway crossing of defendant's train with the wagon in which plaintiff was riding, *held*, the evidence justified the jury in finding that defendant was negligent in failing to ring the bell of its locomotive when approaching the crossing.

**Same—Injury to Wife in Wagon Driven by Husband—His Negligence Not Imputed to Her—Contributory Negligence—Question for Jury.**

Plaintiff was riding with her husband, at his invitation, in his wagon, drawn by his horses, which he was driving at the time of the injury. She had no control over him in the management of the team. He was not her servant or agent, and they were not engaged in a joint enterprise. It is conceded, for the purposes of the case, that he was negligent in failing to look and listen before attempting to cross the railroad track. *Held*, his negligence is not imputable to her. *Held*, further, it was a question for the jury whether she was guilty of contributory negligence in failing,

[1] Reported in 74 N. W. 174.

herself, to look and listen, or to observe that her husband was not using due care to look and listen, if such was the fact.

**Rulings of Court.**

Other rulings of the court disposed of.

Appeal by defendant from an order of the district court for Freeborn county, Whytock, J., denying its motion for a new trial after a verdict for $1,100 in favor of plaintiff.   Affirmed.

*H. H. Field, W. E. Todd* and *H. C. Carlson*, for appellant.

The doctrine of imputable negligence is based upon the relation or status of the parties with reference to whom it applies.   It may be conceded that in accordance with the general rule the negligence of the driver of a private vehicle, over whom the passenger has no control and between whom and the passenger there does not exist the relation of master and servant, is not imputed to the passenger. As the relation between passenger and driver changes, the doctrine begins to change, and it is held upon principle that the negligence of the driver of a private vehicle will be imputed to the passenger. Allyn v. Boston, 105 Mass. 77;  Randolph v. O'Riordon, 155 Mass. 331;  Prideaux v. City, 43 Wis. 513;  Otis v. Town, 47 Wis. 422; Payne v. Chicago, 39 Iowa, 523;  Stafford v. City, 57 Iowa, 748; Slater v. Burlington, 71 Iowa, 209; Johnson v. Gulf, 2 Tex. Civ. App. 139.

Courts which consider and concede the force of the changed situation of the parties, as this court does, have held that the negligence of the husband is imputed to the wife.   Pennsylvania v. Goodenough, 55 N. J. L. 577;  Huntoon v. Trumbull, 2 McCrary, 314; Peck v. New York; 50 Conn. 379;  City v. Seward, 86 Ill. 402;  Yahn v. City, 60 Iowa, 429;  Gulf v. Greenlce, 62 Tex. 344;  Carlisle v. Town, 38 Vt. 440;  Nesbit v. Town, 75 Iowa, 314.   The following courts do not hold, but concede it to be the law based upon sound principle, that the negligence of the husband will be imputed to the wife on the ground of the relation or status of the parties. Lapsley v. Union, 50 Fed. 172;  Follman v. City, 35 Minn. 522; Nesbit v. Town, supra.

It is also held by the courts, recognizing the new and changing elements brought into the case by the changed relation of the par-

ties, that the negligence of the parent or guardian is imputed to the child and ward. Fitzgerald v. St. Paul, 29 Minn. 336; Messenger v. Dennie, 137 Mass. 197; Leslie v. City, 62 Me. 468; Pittsburgh v. Vining, 27 Ind. 513; Hathaway v. Toledo, 46 Ind. 25; Morris v. Chicago, 26 Fed. 22; Slater v. Burlington, supra; Reed v. Minneapolis, 34 Minn. 557; O'Malley v. St. Paul, 43 Minn. 289. If the negligence of the parent is to be imputed to the helpless child, much more should the negligence of the husband be imputed to the wife. Furthermore in this state, before the statute of 1897, it was held that a husband is responsible for the torts of his wife. Brazil v. Moran, 8 Minn. 205 (236); Morgan v. Kennedy, 62 Minn. 348.

*John A. Lovely, Henry A. Morgan* and *Clement S. Edwards*, for respondent.

The negligence of the husband is not to be imputed to the wife. Louisville v. Creek, 130 Ind. 139; Weldon v. Third, 38 N. Y. Supp. 206; Munger v. City, 66 Mo. App. 629; Reading v. Telfer, 57 Kan. 798; Chicago v. Spilker, 134 Ind. 380; Sheffield v. Central, 36 Fed. 164; Shaw v. Craft, 37 Fed. 317; Galveston v. Kutac, 72 Tex. 643. The negligence of the child is imputed to the parent because he belongs to the parent, to whom discretion in the care of his person is exclusively confided. Hartfield v. Roper, 21 Wend. 615. But the same reason does not hold good in the case of husband and wife; for the husband does not exclusively control his wife, nor is she his slave or servant, and there is no reason why she should be regarded as incapable of exercising care for her own protection to such an extent that her acts are to be deemed those of her husband, or his acts hers. Those cases where a wife riding with her husband was held responsible for his negligence depend upon the rule expressly repudiated by the court that the neglect of the driver is imputable to the passenger without reference to the marital relation. Prideaux v. City, 43 Wis. 513; Carlisle v. Town, 38 Vt. 440.

CANTY, J.

Plaintiff was riding with her husband in his wagon drawn by his horses, which he was driving. He sat beside her in the wagon seat, and, as he attempted to drive across the railroad track of defendant on a grade crossing, the wagon was struck by defendant's engine,

and plaintiff was thrown out and injured. She brought this action to recover damages for the injury, on the trial had a verdict, and from an order denying a new trial defendant appeals.

The collision occurred at the village of Alden, in Freeborn county. The wagon road extends north and south, and the railroad east and west, through the village. Plaintiff and her husband resided six miles south of the village. He hitched up his horses that morning to go to town on business, and she asked permission to ride with him, for the purpose of going to see the sick child of her daughter. As they approached the crossing, they were traveling north, and the train which struck the wagon came from the east.

1. To the following questions submitted to the jury, they made the following answers:

"(1) Q. Was a long blast of the whistle sounded at least eighty rods from the crossing? A. Yes. (2) Q. Was the bell rung continuously from a point at or near the switches until the accident occurred? A. No. (3) Q. At what rate of speed per hour was the train running when it reached the crossing where the accident occurred? A. Twelve miles per hour."

Whether the answer to the second question is a sufficient finding that defendant was negligent, we need not consider. If it is not, the general verdict is a sufficient finding to that effect. As to whether the bell was rung continuously or at all while the engine was approaching the crossing, the testimony was very conflicting, and in our opinion the verdict is sustained by the evidence.

2. It is contended by appellant that the evidence shows conclusively that plaintiff and her husband were both guilty of contributory negligence, in failing to look and listen before attempting to cross the railroad track, that his negligence is imputable to her, and that for these reasons the evidence does not sustain the verdict.

It appears by the evidence that the road approaching the crossing is level for 750 feet from the crossing, and of the same level as the crossing; that the only obstructions to the view when looking east along this 750 feet of the road or street were four houses and a mill. The mill fronts on the street, and is 30 feet wide. The main part of it is 60 feet high and 60 feet long, adjoining the end of it on the east is an engine and boiler room 25 feet long and 20

feet high, and immediately east of this are coal sheds and sale sheds; making a continuous row of buildings 150 feet in length along the right of way. These buildings extended parallel to the main track, and were 50 feet from the center of that track. Between these buildings and the main track was a spur track, and between the spur track and the main track was a hand-car and tool house, the dimensions of which were 12 feet north and south, 10 feet east and west, and it was 10 feet high. It stood about 14 feet from the street, and equidistant between the mill and the main track.

On the east side of the highway, and 125 feet south of the mill, stood a building known as the "Paint Shop." South of this, and at intervals, along the east side of the rest of this 750 feet of road, were two or three other buildings. At a point 1,200 feet east of the crossing, the railroad track enters a cut. Three hundred feet further east, this cut is deep enough to hide completely from view an approaching train. A person going north on the 125 feet of highway between the paint shop and the mill could see the train as it emerged from this cut, and the train would remain in full view until it passed behind said row of buildings, consisting of the mill, engine house, coal and sale sheds, 150 feet long.

Some time prior to the collision the smokestack of the mill, which rose above the engine room, had broken off. On the morning in question dense volumes of smoke and steam were issuing from the broken end of this chimney, and from the exhaust pipe on the roof of the engine house. It was a raw, cold morning. The wind, blowing from the southeast, occasionally carried the smoke and steam down to the ground north of the mill, completely obscuring the view to the east as a person on the street approached the crossing just north of the mill.

Plaintiff and her husband were familiar with the crossing, and had passed over it a great many times. He stopped his team at the mill, and listened for a train, and they both testify that they heard none. Then he started up. The space north of the mill was filled with smoke from the broken smokestack. He drove upon the track, and, after he had got upon the same, the engine in question, pulling a freight train, emerged from the smoke, but a few feet away, and struck the wagon.

Plaintiff and her husband were not engaged in a joint enterprise, and he was not her servant or agent; and the doctrine of respondeat superior did not apply so that his negligence should be imputable to her. See Howe v. Minneapolis, 62 Minn. 71, 64 N. W. 102. In that case the plaintiff was riding in the wagon of a neighbor at his invitation. The latter was driving. A collision occurred at the crossing of a railroad, and we held that the negligence of the driver of the wagon was not imputable to the plaintiff. As regards the question here involved, we see no difference between the case of neighbor and neighbor, and the case of husband and wife. Then, conceding, without deciding, that the evidence shows conclusively that plaintiff's husband was guilty of negligence contributing to the injury, it will not prevent plaintiff from recovering.

Under all the circumstances of the case, it was a question for the jury whether plaintiff was herself guilty of contributory negligence, in failing to look and listen, or to observe that her husband was not using due care to look and listen, if he was not. Neither of them, while passing between the paint shop and the mill, observed the train, which was running about 35 minutes behind its regular time. It was a cold morning in January, and she was wrapped up, and had a hood on her head, to protect her from the cold. She occasionally looked to the west, as she saw the smoke of a creamery in that direction, and supposed that it arose from a train coming from the west, which she thought was about due, but she did not look to the east. She believed that her husband was a careful driver, and that he was driving carefully at the time in question.

3. Plaintiff was called as a witness on the trial, and the following proceedings occurred:

"Q. Was Mr. Finley, your husband, driving the team carefully that morning? (Objected to for the reason that it is not competent for the witness to give her opinion on that question. Objection overruled, and exception noted.) A. The team was driven as carefully as any man could drive it. We neither ran nor abused it. We were just going on just a little shack, as we always do."

While this question was hardly proper in form, we cannot hold the ruling of the court to be reversible error. It was competent to prove by plaintiff that she believed that her husband was driving

carefully, as such proof would tend to negative contributory negligence on her part. As the question was put, it calls for an answer somewhat more positive, but for all practical purposes the effect is the same. The jury could not have been misled by it into supposing that they were to take her testimony, as that of an expert on careful driving, which expert was answering one of the questions which the jury were to answer by their verdict. Neither is it to be inferred that the court admitted the evidence for such a purpose.

The evidence warranted the special finding that the train was running at the rate of 12 miles per hour at the time of the collision.

There are various exceptions to portions of the charge, and to the refusal to charge as requested, but these are all disposed of by what has already been said.

Order affirmed.