TILLIE WOSIKA v. ST. PAUL CITY RAILWAY COMPANY.

JOSEPH SHINDELUS v. ST. PAUL CITY RAILWAY COMPANY.[1]

July 5, 1900.

Nos. 12,070—(162).

**Street Railway—Duty in City and in Suburbs.**

The reciprocal relations of the public and a street-railway company vary according to circumstances and conditions. Distinction made as to their relative rights and duties in the populous and in the sparsely-settled parts of a city. *Held*, that the driver of a vehicle who drove upon a street-railway track in the suburban, thinly-settled district of a city, where the public use of the street was limited, without looking for approaching cars, was guilty of negligence.

**Contributory Negligence of Principal.**

One who, under such conditions, is riding in a rear seat, and who has no direct control over the horses at the time, but who is a joint contributor to the hire of the team for the occasion, is guilty of negligence if he does not look for approaching cars upon crossing a street-car track.

**Contributory Negligence of Passenger.**

Under the circumstances of this case, a mere passenger, who has no control over the team, was not guilty of negligence in failing to look out for cars when crossing the track.

**Assignments of Error.**

Certain assignments of error examined, and *held* to be not sustained.

Two actions in the district court for Ramsey county to recover damages for personal injuries, the one by Tillie Wosika by her guardian ad litem to recover $1,550, the other by Joseph Shindelus by his guardian ad litem to recover $1,200. The cases were tried before Kelly, J., and a jury, which rendered verdicts in favor of plaintiff in each case. From an order in each case denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed as to plaintiff Wosika. Reversed as to plaintiff Shindelus.

*Munn & Thygeson*, for appellant.

*S. P. Crosby*, for respondents.

[1] Reported in 83 N. W. 386.

LEWIS, J.

Defendant owns and operates an electric street-car line on West Seventh street and its extension between St. Paul and Fort Snelling. At a point about three miles from the business center of St. Paul, plaintiffs were riding, together with five other young men and two other young ladies, in a three-seated vehicle along West Seventh street, on the northerly side of the car track, in a westerly direction. The rig had been engaged for the day, and all of the young men contributed for its hire. The young women were merely passengers. The track was single from a point four blocks east of Otto avenue, and on past the place mentioned, to Fort Snelling. It was between nine and ten o'clock in the evening, and the night was dark. Having determined to go no further west than Otto avenue, the driver turned the horses to the right, near the street gutter, to get room, then to the left, and crossed the track at nearly right angles, going south. A west-bound car struck the rear wheel of the wagon, upset it, and caused the injuries complained of. Otto avenue enters West Seventh street from a northwesterly direction, and is opened up to, but not across, West Seventh. The latter street is level for several blocks east and west from Otto avenue, and a car could be seen for that distance. Defendant appeals from an order of the trial court denying its alternative motion for judgment or for a new trial.

1. We find the usual conflict of testimony as to the management of the car and conduct of the parties. The charge of negligence made against defendant is that it ran the car at a dangerous rate of speed without warning or signaling its approach. The evidence for plaintiffs in this respect is furnished by the occupants of the wagon. It is merely to the effect that they were driving along by the side of the track, the horses on an ordinary trot, the wagon or carriage making but little noise; that the car approached without their hearing a bell or gong, or the noise of the car, and that when they did see the car the horses were then on the track, and the car within a few feet, rapidly approaching, striking the rear wheel, and pushing the wagon out of the way; and that the car was not brought to a stop until it had proceeded from fifty to seventy feet further. Some of the witnesses stated that they saw no headlight,

and no motorman in front.   It is true that most of this testimony was of a negative character.   The headlight might have been burning, the motorman at his post, and the occupants of the wagon might not have observed the fact in their excitement.   But the distance traveled by the car after the collision, the force of the contact, and the contradictory statements between the plaintiffs' and defendant's witnesses as to the light and signals, made the question properly one for the jury   On the whole record, there was evidence reasonably tending to support the finding of the jury.

2. Plaintiff Shindelus occupied the same position as the driver, with reference to the control of the team.   The hiring of the rig for the purposes of the day was the joint act of all the young men.   If the driver was negligent in crossing the track under the circumstances, or if Shindelus himself was negligent in not looking or listening, then he cannot recover.   The testimony of the driver was that he looked to see if a car was coming just as he turned to the right, towards the gutter, but that he did not look after that, and had no knowledge of the approach of the car until the horses were on the track, when he started up the horses.   Although the headlight might have been out, and the gong not sounded, the body of the car was lighted; and, if he had looked, he must have seen the car at that distance before driving the horses upon the track.   In thus attempting to cross the track without further looking, the driver was negligent.   The testimony of plaintiff Shindelus was that some one spoke and said it was too late to go out further, and that they should turn around and go home; that the driver turned the horses to the right, and then to the left, to cross the track, in order to turn around; that he heard no car and no signals of any kind, and did not look to see; that he paid no attention, and knew nothing about the approaching car until it was upon them.   This was negligence on his part.

Respondents claim that neither the driver nor plaintiff was required to look for cars before crossing the track, and they rely on the case of Shea v. St. Paul City Ry. Co., 50 Minn. 395, 52 N. W. 902, as the leading authority.   In that case a hackman attempted to cross a street, and only looked one way before driving over.   He was struck by a rapidly approaching car from the other direction,

and, had he looked in that direction, he would have seen the car. It was held, under the circumstances of that case, not to be negligence to fail to look both ways as he approached the track. In the opinion the distinction is made between the relative rights of a steam railway and the public and street railways and the public. Two reasons are assigned for the distinction: First. Street cars are more easily controlled, and are not attended with the same danger in their management. Second. The steam railroad has a proprietary interest in and to its right of way, even where the public have an easement over it for highway purposes, whereas a street railway is not a highway; the company possessing only the right to use the street in common with the public generally.

While the primary rights of the two classes of railways are as above stated, yet the relative duties of each to the public are not necessarily always the same. In the case of a steam railway the rule that the rights of travelers upon highways across it are subordinated to the interests of the railway company grows out of public interest and necessity. A steam railway is for the purpose of accomplishing rapidly communication between places at a distance from each other. The ordinary rate of the street car would not answer the purpose. But street-car service is to meet the public demand for transportation of a local nature, as from block to block, from the business part to the residence part of the city, or from the city proper to the suburban districts, or resorts in the country adjacent. In the case of steam railways, the relative degree of care required from the company and traveling public varies according to the nature of the crossing or the peculiar circumstances of each case. So with reference to street railways. While, as a general rule, in the populous part of a city a person in crossing a street-car track in a public street should not be held to any greater degree of care than the street-railway company, yet there may be such circumstances and conditions as would make it necessary to modify the rule. In the cases of Shea v. St. Paul City Ry. Co., supra; Watson v. Minneapolis S. Ry. Co., 53 Minn. 551, 55 N. W. 742; and Kennedy v. St. Paul City Ry. Co., 59 Minn. 45, 60 N. W. 810,—the rule was applied where the accident took place in populous parts of the cities, and where the streets were frequently

traversed. Under such circumstances public necessity would require that the duties of the company and the public be reciprocal, and it is not our intention to modify or take from the effect of the decisions referred to.

The car in question was operated between the city of St. Paul and Fort Snelling,—a distance of several miles. The street upon which the track was laid and the cars operated was practically a country road. To meet the requirements of the public and to make the enterprise successful, the distance should be traveled rapidly. There was nothing to prevent this. Few teams and people, comparatively, used the street; and the defendant might properly, under such conditions, propel its cars at a greater speed than in the city proper, and consequently with less degree of care, relatively to the public. And, inasmuch as the public make but limited use of the street at that point for the purpose of crossing it, there is every reason why the public interest and privilege should be subordinated to the necessities of the railway company in a corresponding degree. Their rights and duties are still relative, but under different conditions.

3. As to plaintiff Wosika, she was a mere passenger, sitting upon the rear seat, having no control over the team or direction over the driver; and, although she did not look for approaching cars as the team turned upon the track, we are inclined to the view that under the doctrine of Howe v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 62 Minn. 71, 64 N. W. 102, the question of her negligence was a question for the jury.

4. It was not error to exclude the ordinance as to fast driving. There was no evidence tending to show that plaintiffs drove upon the track at a rate in violation of the ordinance. If they did travel at a prohibited rate at some time before attempting to cross the track, such fact was not the proximate cause of the accident.

5. Appellant took exception to the charge of the court that the jury might consider whether there was a headlight burning on the car at the time of the accident. The court did not single out the headlight and submit the question of defendant's negligence on that one point. It was a proper matter to be considered in connection with the other facts to be passed on, and the court so instructed the

jury, and we find no error from the mere fact that the plaintiff's evidence in that respect was chiefly of a negative character.

6. The jury awarded plaintiff Wosika $200, and this, appellant insists, was too much, and should be reduced. She was violently thrown from the wagon, and picked up in an unconscious condition, although she soon recovered, and lost but little time from her work. We cannot say the amount is excessive.

Order affirmed as to plaintiff Wosika, and as to plaintiff Shindelus the order is reversed, and a new trial granted.

START, C. J., (dissenting).

I dissent. The attempted distinction between this case and Shea v. St. Paul City Ry. Co., 50 Minn. 395, 52 N. W. 902, seems to me to be unsound. It would seem that the necessity for a person who is about to cross a street-car track in the central part of a city to look both ways for the approach of cars is quite as imperative as it is in the suburbs. If the question of the negligence of an injured party be a question of fact in the one case, it ought to be in the other.