CLARENCE H. COTTON v. WILLMAR & SIOUX FALLS RAILWAY COMPANY.[1]

November 23, 1906.

Nos. 14,906—(120).

**Locomotive Bell—Evidence.**

When it is alleged that the bell on a locomotive was not rung as the train approached a crossing, the evidence of witnesses who were present, conscious, in the possession of their physical senses, and listening for signals, that they did not hear it ring has probative value sufficient to take the issue to the jury, although other witnesses testify that the bell did ring.

**Negligence—Passenger and Driver.**

When a person employs a livery team with a driver to carry him to a specified place, the relation of master and servant does not exist between the passenger and the driver. They are not engaged in a common employment or a joint enterprise, and the negligence of the driver, in driving upon a railway track without taking proper precautions to ascertain the approach of a train, is not imputable to the passenger. The latter, however, is responsible for his own personal negligence.

**Same.**

The primary duty of caring for the safety of the vehicle and passengers rests upon the driver, and, unless the danger is obvious or is known to the passenger, the latter may rely upon the assumption that the driver will exercise proper care and caution in approaching a place of danger. But, if the passenger knows that the driver is incompetent or careless, or sees that the driver is not aware of the danger and is not taking proper precautions, it is his duty to notify him of the danger and a failure to do so is negligence.

Action in the district court for Pipestone county to recover $10,-125 for personal injuries. The case was tried before P. E. Brown, J., and a jury, which returned a verdict in favor of the plaintiff for $5,095. From an order denying a motion for judgment notwithstanding the verdict, or for a new trial, defendant appealed. Affirmed.

*W. R. Begg, C. H. Winsor,* and *W. F. McNaughton,* for appellant. *Janes & Janes,* for respondent.

[1] Reported in 109 N. W. 835.

ELLIOTT, J.

On the evening of December 21, 1905, the respondent, Cotton, engaged a livery team and driver to take him from Bell Rapids, South Dakota, to Jasper, Minnesota. The vehicle was a common, single-seated, two-horse buggy, and the driver was a young man about nineteen years of age who had had experience and was familiar with the route over which they were to pass. By the time they reached the village of Jasper it was dark and the lights were burning in the streets and houses. The weather was cool, the top of the buggy up, and the side and back curtains were drawn. Both the respondent and the driver wore heavy coats with the collars turned up but not in such manner as to interfere materially with their hearing. Wall street, upon which they entered the village, crosses the appellant's railway track at a point about seven rods east of where the street crosses a bridge or culvert. The street runs east and west and the railway track extends practically north and south. The depot building is on the west side of the track and just south of the street crossing. When the team was between fifty and seventy rods from the track, both the respondent and the driver heard the whistle of a locomotive. They continued on at a brisk pace until they crossed the bridge when the team was brought to a walk and the respondent leaned forward and looked and listened for the approaching train. At the same time the driver who sat on the respondent's right, toward the south, also looked out and listened for the train. It does not appear that the driver saw anything or made any remark, although the engine of the train must have then been behind, and concealed from view by, the station building and the train extending towards the south where it would have been visible in the daytime. The respondent, however, saw a light some six hundred or seven hundred feet up the track to the northward, which he assumed to be the headlight of a locomotive and said, "There is the headlight." Assuming apparently, that they had ample time to cross the track before the train would come that distance, both parties settled back in the seat, the driver touched the horses with the whip and drove rapidly upon the track. They were struck by the train coming from the south and the respondent sustained injuries for which he recovered a verdict for $5,000. The appeal is from an order deny-

ing a motion by the railway company for judgment notwithstanding the verdict or for a new trial.

The appellant contends that the evidence was not sufficient to establish negligence on the part of the railway company, but showed conclusively that the accident was caused by the negligence of the respondent in failing to use the proper care for his own safety. The complaint alleges as negligence (a) that the defendant ran the train over the street at a dangerous and unusual rate of speed; (b) failed to provide the engine with a proper headlight; (c) neglected to keep a watchman at the crossing; and (d) failed to give any signal of the approach of the train. These claims were all submitted to the jury, but upon this appeal it is conceded that, if the railway company was negligent, it was in failing to ring the bell as the train approached the crossing. The appellant contends (1) that there was no substantial evidence tending to show that the bell was not rung; (2) that the evidence showed that the respondent personally participated in the acts and controlled the driver in the management of the team, and was thus guilty of contributory negligence; (3) that the court erroneously charged the jury as to the burden of proof and as to the relation between the driver and the respondent; and (4) that the verdict was excessive.

1. The allegation being that the bell was not rung it was competent to prove the negative fact by the testimony of competent witnesses who were so situated that they might, and probably would, have heard the sound had the bell been rung. The plaintiff alleged, and was required to prove, that the bell did not ring. The fact in issue was whether at a certain time and place certain sounds were produced. Silence is as much a fact as sound and the proof of one disproves the other. If a witness heard a sound the necessary implication is that he was where he could hear the sound, but the fact that a witness did not hear a sound carries with it no such implication. Therefore when it is sought to prove the nonexistence of sound by the testimony of witnesses the conditions essential to the competency of the evidence must be supplied. The probative value to be given to the fact that a witness did not hear the sound depends upon the condition of his senses, his proximity to the place, the degree of attention, and other such circumstances which render it more or less probable that, if

the sound had been made, the witness would have heard it. Hence the mere statement of a witness that he did not hear a bell ring is value-less as evidence, unless it further appears that he was able to hear and was in a position and under conditions where he would probably have heard the sound had it been made. The degree of attention will affect the value of the evidence, but the fact that the witness was not giving his direct attention at the time for the purpose of learning whether signals were given will not destroy the value of the evidence if he was present at the crossing, was conscious, and in the possession of his ordinary senses, and testifies positively that he heard no signal. The testimony of a witness that he did not hear a bell rung is thus of itself, as against direct and positive testimony of another that the bell did ring, no evidence that it did not ring, but, taken in connection with evidence showing that the witness could and probably would have heard it, had it been rung, and that he was listening to hear it ring, is evidence that it did not ring. The position and situation of the wit-nesses, the attention they were giving, and their credibility, and the weight of the evidence are questions for the jury. Moran v. Eastern Ry. Co. of Minn., 48 Minn. 46, 50 N. W. 930; Green v. Eastern Ry. Co. of Minn., 52 Minn. 79, 53 N. W. 808; Peterson v. Minneapolis St. Ry. Co., 90 Minn. 52, 95 N. W. 751; Tennessee v. Hansford, 125 Ala. 349, 28 South. 45; Dyer v. Erie, 71 N. Y. 228, 236; Johanson v. Boston, 153 Mass. 57, 26 N. E. 426; Walsh v. Boston, 171 Mass. 52, 50 N. E. 453; Marcott v. Marquette, 49 Mich. 99, 101, 13 N. W. 374; Mc-Lean v. Erie, 69 N. J. L., 57, 54 Atl. 238; Id., 70 N. J. L., 337, 57 Atl. 1132; Goodwin v. Central (N. J. Eq.) 64 Atl. 135; Northern v. State, 100 Md. 404, 60 Atl. 19; Purnell v. Raleigh, 122 N. C. 832, 29 S. E. 953; Reed v. Chicago, 74 Iowa, 188, 37 N. W. 149; At-chison v. Feehan, 149 Ill. 202, 36 N. E. 1036; Chicago v. Eganolf, 112 Ill. App. 323; Chicago v. Pulliam, 111 Ill. App. 305; McDuffie v. Lake Shore, 98 Mich. 356, 57 N. W. 248; Murray v. Missouri, 101 Mo. 236, 13 S. W. 817, 20 Am. St. 601. Such evidence, while nega-tive in form, is affirmative in substance. Grabill v. Ren, 110 Ill. App. 587. The cases cited by appellant are not inconsistent with this rule, as a careful examination of the facts of each case will disclose that some essential element was absent. In Bohan v. Milwaukee, 61 Wis.

391, 21 N. W. 241, and Tully v. Fitchburg, 134 Mass. 499, stress is laid upon the inadequacy of such evidence.

The substance of these decisions is that it is not enough for a witness to say merely that he does not remember having heard a bell ring. "Courts have often been asked," says Wigmore, "to exclude testimony based on what may be called negative knowledge, i. e., testimony that a fact did not occur, founded upon the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred. But there is no inherent weakness in this kind of knowledge. It rests on the same data of the senses. It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that in the ordinary course of events he would have heard or seen the fact had it occurred." 1 Wigmore, Ev. § 664; 2 Elliott, Ev. § 969; 6 Thompson, Neg. § 7865; 5 Current Law, 1369.

The evidence was sufficient to justify the court in submitting the question to the jury. The engineer and fireman, witnesses for the defendant, testified that the bell was rung in the usual manner as the locomotive approached the street crossing. The defendant's witness Larson, who stood on the crossing, saw the team approaching, appreciated the danger of an accident, and shouted to the occupants of the buggy to stop, was not asked with reference to the ringing of the bell, although he testified that he heard the whistle blow and saw the headlight of the locomotive. The respondent and the driver testified that they did not hear the bell ring. There was evidence that they were within a few rods of the approaching engine, the night was dark and frosty; there was but little wind blowing; they were listening for the approach of an expected train; their minds were in a condition under which it is more than probable that they would have heard the ringing of a bell on an engine coming from the south although they understood that the train was approaching from the north; they were conscious; were in the exercise of their ordinary senses; and their sense of hearing was not materially affected by their coat collars. Under all the circumstances the jury might reasonably infer that they would have heard the bell if it had been rung.

2. While the appellant does not contend that the doctrine of imputed negligence applies, the argument would lead to the imposition

of a duty upon the passenger in excess of that which has been approved by this court. In Thorogood v. Bryan, 8 M. G. & S. 115, it was held that a passenger upon the vehicle of a common carrier who sustains an injury, which is the result of the concurrent negligence of the person in charge of such vehicle and a third person, is so identified with the driver as to be chargeable with his negligence in an action against the latter. This case was followed with some modifications by a few American courts, notably Wisconsin and Michigan. Prideaux v. City, 43 Wis. 513, 28 Am. 558; Olson v. Town, 103 Wis. 33, 79 N. W. 29; Mullen v. City, 100 Mich. 103, 58 N. W. 663, 23 L. R. A. 693, 43 Am. St. 436. In Follman v. City of Mankato, 35 Minn. 522, 29 N. W. 317, 59 Am. St. 340, this court refused to accept the doctrine of imputed negligence. It there appeared that the plaintiff was riding in a private carriage at the invitation of the owner and was injured by the concurrent negligence of the driver and a third person. The theory of the identity of the passenger and the driver upon which the English case rested, had it been adopted, would have prevented a recovery upon the facts, but it was held that as the plaintiff was without fault and had no authority over the driver, she could recover. Mr. Justice Dickinson noted the fact that Thorogood v. Bryan had been subjected to criticism in England, and in the following year, after very elaborate consideration, the doctrine was repudiated by the court of appeals in the case of the Bernina, 12 L. R. Prob. Div. 58 (1887). The American courts have very generally declined to approve the doctrine of Thorogood v. Bryan but have not been able to agree upon the extent of the duty which rests upon a person who rides in a vehicle which is driven by a person over whom he has no direct control. Bennett v. New Jersey, 36 N. J. L. 225, 13 Am. 435; New York v. Steinbrenner, 47 N. J. L. 161, 54 Am. 126; Becke v. Missouri, 102 Mo. 544, 548, 13 S. W. 1053, 9 L. R. A. 157.

One group of cases charges the passenger with the absolute duty of keeping a lookout for his own safety, and does not permit him to trust to the care of the driver, while another allows him to rely upon a driver, whom he believes to be careful and competent, without being subject to the implication of negligence. 2 Thompson, Neg. § 1621, and cases there cited. But the rule which has met with general approval in the more recent cases makes the passenger responsible only for his

personal negligence, and leaves it to the jury to determine whether, under the circumstances, he was justified in trusting his safety to the care of the driver and not looking and listening for himself. The negligence of the driver is thus not imputed to the guest or passenger, but the circumstances may be such as to make it the duty of the passenger to look and listen and attempt to control the driver for his own protection. The passenger is thus held responsible for his own negligence but not for the negligence of the driver. He must exercise due care and caution, and, if his negligence contributes approximately to the accident, he cannot recover damages. West Chicago v. Piper, 165 Ill. 325, 46 N. E. 186; Missouri v. Bussey, 66 Kan. 735, 71 Pac. 261; Whitman v. Fisher, 98 Me. 575, 57 Atl. 895; Indianapolis v. Johnson, 163 Ind. 518, 72 N. E. 571; and cases collected in a note to Colorado v. Thomas (33 Colo. 517, 81 Pac. 801, 70 L. R. A. 681) 3 Am. & Eng. Ann. Cas. 703.

In Illinois v. McLeod, 78 Miss. 334, 29 South. 76, 52 L. R. A. 954, 84 Am. St. 630, it was said that, where the danger is apparent, the passenger is chargeable with the duty of taking some action to control the conduct of the driver. In Township v. Anderson, 114 Pa. St. 643, 8 Atl. 379, 60 Am. St. 367; and Dean v. Pennsylvania, 129 Pa. St. 514, 18 Atl. 718, 6 L. R. A. 143, 15 Am. St. 733, it was held that where the danger is obvious or the passenger has knowledge of its existence, he is chargeable with negligence. In Dryden v. Pennsylvania, 211 Pa. St. 620, 61 Atl. 249, it was said that the immunity of the passenger "is not absolute to the extent of excusing reasonable caution in the face of patent danger." A passenger certainly would be negligent if he relied on a driver who was known to be intoxicated or otherwise incompetent. Roach v. Western, 93 Ga. 785, 21 S. E. 67; Meenagh v. Buckmaster, 26 App. Div. 451, 50 N. Y. Supp. 85. Many other cases might be cited to illustrate the rule that a guest or passenger riding in a vehicle with a driver, over whose conduct he has no rightful control, is required, nevertheless, to exercise reasonable care for his own safety.

In Howe v. Minneapolis, St. P. & Sault Ste. M. Ry. Co., 62 Minn. 71, 64 N. W. 102, 30 L. R. A. 684, 54 Am. St. 616, the court said: "We think that it would hardly occur to a man of ordinary prudence when riding as a passenger with a competent driver, who he had no reason to suppose was neglecting his duty, that he was required when

approaching a railway crossing to exercise the same degree of vigilance in looking and listening for approaching trains that he would if he himself had the control and management of the team, and our conclusion is that a court cannot hold, as a matter of law, that a passenger having no control over the team or its management is guilty of negligence merely because he does not exercise the same degree of vigilance in looking and listening on approaching a railway crossing which is required of the one having the control and management of the team.   It is a matter of common knowledge that, under ordinary circumstances, passengers do largely rely on the driver, who has exclusive control and management of the team, exercising the required care when approaching a railway crossing, and we do not think that the courts are justified in adopting a hard and fast rule that they are guilty of negligence in doing so. Every case must depend largely upon its own particular facts." This rule which makes the negligence of the passenger, under all the circumstances, a question for the jury was applied in Johnson v. St. Paul City Ry. Co., 67 Minn. 260, 69 N. W. 900, 36 L. R. A. 586; Finley v. Chicago, M. & St. P. Ry. Co., 71 Minn. 471, 74 N. W. 174; Wosika v. St. Paul City Ry. Co., 80 Minn. 364, 83 N. W. 386; Lammers v. Great Northern Ry. Co., 82 Minn. 120, 84 N. W. 728; Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N. W. 763.   The question of the respondent's contributory negligence was thus for the jury to determine unless the evidence was such as to require the court to determine it as a question of law.

3. The appellant contends that the court erroneously instructed the jury as to the relation which existed between the respondent and the driver.   The rule that the driver's negligence is not imputable to a person who is being carried in a vehicle is only applicable in cases where the relation of master and servant or principal and agent does not exist.   The negligence of a person's own driver is imputable to him.   Markowitz v. Metropolitan, 186 Mo. 350, 85 S. W. 351, 69 L. R. A. 389; Read v. City, 115 Ga. 366, 41 S. E. 629.   So where the parties are engaged in a joint enterprise or in a common employment the negligence of one is imputable to all.   Boyden v. Fitchburg, 72 Vt. 89, 47 Atl. 409; Donnelly v. Brooklyn, 109 N. Y. 16, 15 N. E. 733.   In Cunningham v. City of Thief River Falls, 84 Minn. 27, 86 N. W. 765, the court said:   "Parties cannot be said to be engaged in a joint

enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management."

These parties were not engaged in a joint enterprise, neither did the relation of principal and agent or master and servant exist between them. The respondent had contracted to be conveyed to Jasper for an agreed consideration. He was a passenger in a quasi public conveyance, and had no rightful control over the actions of the driver. Neither party had the right to direct the movements of the other. The respondent asked the liveryman at Bell Rapids what he would charge to take him to Jasper, and was informed that he would do it for $2.50. Later in the day he telephoned for the team and the liveryman sent it with Nelson as driver. The driver was the servant of the liveryman. This is all the evidence as to the contract of hiring, and it fails to show any relationship which would charge the respondent with responsibility for the actions of the driver. In Randolph v. O'Riordon, 155 Mass. 331, 29 N. E. 583, it was held that the relationship of master and servant was not created by a mere contract for conveyance in a livery team. The court said: "Whether the hack and driver were hired at a public stand or of a private person could make no difference, nor whether the party furnishing them was engaged in the business of a common carrier of passengers or not." See also Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652; Lewis v. Long Island, 162 N. Y. 52, 56 N. E. 548; Sluder v. St. Louis, 189 Mo. 107, 139, 88 S. W. 648, and Quarman v. Burnett, 6 M. & W. 499.

A careful examination of the evidence satisfies us that the question of respondent's contributory negligence was under all the circumstances for the jury to determine. It differs very materially from the case of Shindelus v. St. Paul City Ry. Co., 80 Minn. 364, 83 N. W. 386, in which it appeared that the plaintiff neither looked, listened, nor took any precautions whatever for his own protection. It is claimed that the respondent actively participated in the negligence of the driver. The respondent did not assume to control the actions of the

driver unless it was by the statement or exclamation with reference to the headlight. It is evident that this statement did not cause the driver to relax his vigilance or induce him to do anything that he would not otherwise have done. He had himself leaned forward and looked in the direction from which the train was approaching. The respondent's statement may have prevented him from looking to the north, but this was of no consequence as the train was not coming from that direction. There was evidence tending to show that the respondent looked and listened for an approaching train; that he saw a light which he erroneously assumed to be the headlight of an approaching locomotive; that he looked and listened for the approaching train; that, had the light seen by him been the headlight, there would have been ample time to cross the track without injury; that he observed the driver looking and listening, and there was nothing to show that he had any reason for doubting that the driver was an ordinarily cautious and competent person. Considering all the circumstances in connection with the fact that the respondent's attention was diverted to the light which he erroneously assumed to be the headlight of the locomotive of the approaching train (Peterson v. Minneapolis St. Ry. Co., 90 Minn. 52, 95 N. W. 751), it is apparent that there was sufficient evidence to take the issue of contributory negligence to the jury and to sustain its finding that the respondent was not guilty of contributory negligence.

4. While the amount of damages awarded is liberal, it is not so excessive as to justify us in interfering with the order of the trial court.

The other assignments of error have been carefully considered and found without sufficient merit to justify a reversal.

The order from which the appeal is taken is therefore affirmed.