BRUBAKER, Respondent, vs. IOWA COUNTY, Appellant.

*June 1—July 13, 1921.*

*Automobiles: Imputed negligence of passenger: Husband as agent of wife: Presumption: Joint enterprise: Negligence: Defective highways: Liability of county: State trunk system: Insufficiency due to repairs: Knowledge of county: Barriers and warning signs: New trial to interplead driver of automobile.*

1. A husband and wife moving to another city, where the husband intends to teach and the wife to attend college with a view of obtaining a position, are not engaged in a joint enterprise so as to impute to the wife the negligence of the husband while driving in an automobile to the city to which they were moving. *Reiter v. Grober*, 173 Wis. 493, followed.

2. A relation of agency, or such joint financial interest in an undertaking as to make a husband's negligence imputable to his wife, will not be presumed; and the negligence of the husband is not imputable to the wife merely because of the marital relation, when they were not engaged in a joint enterprise and the wife has no direction or control over the husband's movements.

3. The wife was not guilty of contributory negligence in failing to see signs warning of the dangerous condition of the road, or in failing to protest at the rate of speed at which the husband was driving, where the jury found on sufficient evidence that there were no signs which would warn an ordinarily prudent traveler and there was no evidence that the plaintiff, who was in the rear seat, could have formed an intelligent judgment as to the rate of speed.

4. Nor is the wife, while thus riding with her husband over a road apparently in good condition, bound to pay constant attention to the management of the car or to keep a constant lookout for imperfections in the road, though if she sees that he is driving at a dangerous rate of speed or in violation of the law reasonable care requires a protest.

5. Where as part of the permanent construction of a state trunk highway a culvert and grading were ordered by the county authorities and the work was performed under the supervision of the state authorities and left in an unsafe condition, the county had notice of a defect due to the making of such repairs so as to be liable for an injury under sub. 5, sec. 1317, Stats.

6. The posting of signs on a road which was being repaired stating that it was closed for travel was not sufficient to relieve the county from liability, where there were no barriers and the signs were not such as would have warned an ordinarily prudent traveler, and to the knowledge of the county authorities the road was being used by the public.

7. A new trial will not be granted, after judgment for plaintiff, to enable the county to interplead the husband as a defendant and have contribution from him.

APPEAL from a judgment of the circuit court for Iowa county: L. H. BANCROFT, Circuit Judge. *Affirmed.*

Action for damages for personal injuries caused by the insufficiency of a state trunk highway. Trial before a jury resulted in judgment for the plaintiff upon a special verdict after a finding of contributory negligence had been changed by the trial court. Defendant appeals.

On August 25, 1919, plaintiff, her husband, and her sister were proceeding from Oshkosh, Wisconsin, to Sioux City, Iowa, where plaintiff and her husband intended to reside. They were traveling in the husband's automobile. He was driving and plaintiff and her sister sat in the rear seat. The car was relatively heavy and had good brakes and good lights. They were traveling, at least in the main, on the state trunk highway between Madison and Dodgeville. As they approached the latter city it was between twilight and dark and the lights on the car were lighted. The driver testified that he was keeping good watch of the road ahead and was going not over twenty miles per hour. Plaintiff was paying no attention to the driving, but both she and her sister testified that they were going slowly. There was no other direct testimony on the question of speed. It was undisputed that the road at this point was commonly traveled and was in good shape for travel up to the place of the accident.

While thus proceeding the driver suddenly noticed a sharp incline over a culvert which crossed the road. He stated that he noticed this condition only when very close,

about two or three car lengths, probably forty or fifty feet, from the place. Plaintiff testified she first noticed it when it was right in front of the car. The driver attempted to stop the car but was unable to do so until he had passed over the culvert and some forty-five feet beyond, all distances, presumably, being measured from the front of the car. In passing over the incline plaintiff was thrown out of the car upon the ground and received the injuries complained of.

The highway was being relocated in places and repairs and construction were being made on parts of the old road. The diagram used at the trial does not appear in the record and it is difficult for this court to exactly locate all the roads and points mentioned in the testimony and to determine which are new and which are old.

There was much testimony to the effect that the road was closed to travel and that signs were posted to that effect. The testimony regarding these signs was confusing. It appeared they were sometimes in place and sometimes out of place, that at least one was in place the night of the accident, and that there were none near the culvert itself. Some things appeared clearly: there was no sign or barrier across or upon the traveled track, no lights were placed, none of the signs were of very large size or great prominence, and it was well known to the authorities, and expected, that persons would continue to use the road despite the signs. None of the occupants of the car saw any signs. The road beyond the signs and up to the culvert was in good repair and without evidences of incomplete construction.

There was a traveled turnout at the culvert by which cars could pass around instead of over it, and it seemed that this was customarily used by persons acquainted with the situation. The occupants of the car did not notice it, however. The culvert was covered with a layer of dirt, and it formed an elevation of eighteen or twenty inches in a slope of six feet, the slope being steeper on the side from which the car approached than it was on the side beyond.

Several travelers on the highway came along shortly after the accident. One of these testified that there was just enough dirt over the culvert so that a person who didn't know the situation would drive on it; that there was a track over it, presumably the track of plaintiff's car, but no indicated travel over the top. Another of these testified that a stranger who didn't know the road would drive over the culvert and not look to the side of the road, for there had been several cars passing over it.

There was no testimony as to the space required to stop plaintiff's car from a speed of twenty miles per hour or less.

The jury found that the highway at this place was not in a reasonably safe condition for public travel by persons in the exercise of due care and that this condition was the proximate cause of the accident. They found that there were no signs or barriers such as would attract the attention of an ordinarily prudent traveler to notify him that the highway was not open to travel; that there was want of care on the part of the driver which proximately contributed to the injury; and fixed damages at $1,200.

The trial court changed the finding of negligence on the part of the driver and ordered judgment for the plaintiff.

For the appellant there was a brief by *R. T. Jackson,* district attorney of Iowa county, and *Fiedler, Fiedler & Jackson* of Mineral Point, of counsel; and the cause was argued orally by *R. T. Jackson.*

For the respondent there was a brief by *McGeever & McGeever* of Dodgeville, and oral argument by *James D.* and *W. C. McGeever.*

JONES, J. It is earnestly argued by appellant's counsel that the court erred in changing the answer of the jury in which they found that the driver of the car was guilty of contributory negligence. There is undoubtedly some force in the claim that he should have sooner seen the elevation in the road and that he should have sooner stopped the car.

But in view of the rule which now obtains in this state it becomes unnecessary to decide whether the ruling of the court complained of was erroneous. Under the rule which long prevailed in Wisconsin as declared in *Prideaux v. Mineral Point,* 43 Wis. 513, one voluntarily in a private conveyance voluntarily trusts his personal safety in the conveyance to the person in control of it. Voluntary entrance into a private conveyance adopts the conveyance for the time being as one's own, and assumes the risk of the skill and care of the person guiding it. As pointed out by Mr. Justice VINJE in a recent case, this rule of imputed negligence has never received extended judicial approval and has been adhered to in only a few states. Since it was not a rule of property this court felt at liberty to change it in the interests of justice and to conform to the overwhelming majority rule. The opinion closed with this language:

"Only so much of the *Prideaux Case* is overruled as imputes the negligence of the driver to an occupant in a private conveyance who has no control over the driver; is not engaged in a joint undertaking with him; is guilty of no negligence himself; and stands in no other relation to him requiring his negligence to be imputed to the occupant." *Reiter v. Grober,* 173 Wis. 493, 181 N. W. 739.

Thus we are squarely confronted with the question whether the facts of this case are such that negligence of the driver would have defeated a recovery by the plaintiff. Appellant's counsel argue that plaintiff and her husband were engaged in a joint undertaking. The argument is based on the facts that they were moving their home from Oshkosh to Sioux City. The husband intended to teach and the plaintiff to attend college to improve her stenography and obtain a position. There is no evidence that the journey was undertaken merely at the request of the wife or of any fact showing that the husband was acting as her agent, or that they were jointly operating or controlling the movements of the car at the time of the accident. Nor is there

Brubaker v. Iowa County, 174 Wis. 574.

any proof that they were engaged in any joint financial undertaking. As fellow travelers they were going from Oshkosh to Sioux City to pursue their several avocations. In one sense husbands and wives in their journey through life are always engaged in joint enterprises, sometimes successful, sometimes disastrous. But the mere fact that they travel in the same car, whether for pleasure or to change their abode, does not constitute a joint enterprise within the meaning of the rule under discussion.

Doubtless there may be such special facts showing agency or such joint financial interest in the undertaking as to make the negligence of the husband imputable to the wife and to defeat a recovery on her part. But no such facts are found in this case and there is certainly no presumption that any such relation existed. It was merely the ordinary social and domestic relationship involved when husband and wife are traveling together. There are numerous cases which hold that, when a wife is traveling with her husband when they are not engaged in any joint enterprise and when she has no direction or control over his movements, she is not chargeable with his negligent acts. In other words, from the mere marital relationship the contributory negligence of the husband is not to be imputed to the wife. *Louisville, N. A. & C. R. Co. v. Creek,* 130 Ind. 139, 29 N. E. 481; *Louisville R. Co. v. McCarthy,* 129 Ky. 814, 112 S. W. 925; *Finley v. C., M. & St. P. R. Co.* 71 Minn. 471, 74 N. W. 174; *Bailey v. Centerville,* 115 Iowa, 271, 88 N. W. 379; *Reading Tp. v. Telfer,* 57 Kan. 798, 48 Pac. 134; *Dudley v. Peoria R. Co.* 153 Ill. App. 619; *Kokesh v. Price,* 136 Minn. 304, 161 N. W. 715.

It is argued by appellant's counsel that the court erred in refusing to submit to the jury the question of the contributory negligence of the plaintiff herself. Doubtless the plaintiff was bound to use such care as a reasonably prudent person would exercise under similar circumstances. It cannot be successfully claimed that plaintiff should have seen

signals warning of danger, since the jury found on sufficient
evidence that there were none which would warn an ordi-
narily prudent traveler.   It is claimed that the rate of speed
was excessive and that plaintiff should have known it and
remonstrated.   There was no direct evidence that they were
going faster than twenty miles per hour, but it is argued
that the physical facts show a much greater speed.   In this
argument there is the weakness that no testimony was of-
fered to show within what distance such a car going at the
rate of twenty miles per hour could have been stopped.
Even if plaintiff had been intent upon the subject, it is
doubtful whether under the conditions she could have
formed any intelligent estimate of the rate of speed.   There
is no evidence that she had any reason to doubt the care or
skill of the driver of the car.

It is true that she was not paying attention at the time to
the operation of the car.   But we do not understand that a
wife sitting in the rear seat when her husband is driving a
car over a road apparently in good condition is bound to
pay constant attention to the management of the car or to
keep a constant lookout for imperfections in the road.   Much
advice and many suggestions to the driver by one sitting in
the rear seat are not conducive to the best management of
the car.   If the occupant sees the driver is driving at a
dangerous rate of speed or in violation of the law, reasonable
care would require that the passenger protest.   This was
illustrated in the recent case of *Howe v. Corey,* 172 Wis.
537, 179 N. W. 791, cited by appellant, where the plaintiff,
a guest, testified that they were going at least fifty miles per
hour in a city; he was sitting on the front seat keeping no
watch and merely remarked that they were going pretty fast.
They ran into a railroad train standing on a crossing, and
it was held that plaintiff could not recover.   Other cases
might be cited where the passenger knew or ought to have
known of the danger and, failing to remonstrate, was denied

recovery; but they do not seem to us controlling under the facts of the present case. The trial judge, after hearing the testimony and seeing the witnesses, held that there was no credible evidence to be submitted to the jury on this question, and we agree.

Appellant's counsel urge that the highway at the point where the accident occurred was not part of the trunk system of highways for the maintenance and repair of which the county was responsible. The complaint alleged that the highway in question was part of the trunk highway system. The answer set up that the highway had never been adopted by the county nor had become a part of the county highway system, but expressly alleged that the place where the accident occurred was and is on the state trunk highway, and set up that at the time of the accident it was closed owing to repairs being made thereon. That the scene of the accident was a point on a part of the trunk highway system going through the county seems established by the admission in the answer as well as by the testimony of one of the county officers. The testimony was undisputed that the culvert and grading at this point were ordered by the county authorities as part of the permanent construction of the trunk highway, and that the work was performed under the supervision of the state authorities. Since the work of grading the culvert was done by the defendant and since it was left in unsafe condition as found by the jury, we are convinced that defendant had notice of the defect and that there was insufficiency and want of repair within the meaning of sub. 5, sec. 1317, Stats., for which defendant was liable.

We do not think that there is merit in the claim that the road was closed for travel. As appears from the statement of facts there were no barriers and the road at this point was being used by the public, as defendant's officers knew. The finding of the jury as to want of proper signals was sustained by the evidence. If defendant intended to close

the road for travel more effective means should have been taken.

Appellant claims error in giving the following instruction:

"In that connection I further instruct you that a stranger driving upon a public highway has a right to presume that such highway is in reasonably safe condition for the ordinary travel passing along and over the same."

Since we have held that the negligence of the husband, if any, was not imputable to plaintiff, and that the court properly refused to submit the question of plaintiff's negligence to the jury, it seems unnecessary to discuss the merits of this contention.   Of course the existence or non-existence of this presumption would have a bearing on the question of how great a speed might be attained without raising a duty on the part of the passenger to remonstrate.   But the evidence does not show that the plaintiff knew or had reason to know of such a speed even if it be assumed that the instruction was incorrect.

It is suggested by appellant's counsel that if the court should be of the opinion that the negligence of the driver cannot be imputed to the plaintiff a new trial should be granted in order that the defendant might have the privilege of interpleading the plaintiff's husband as a defendant in this case in order that appellant might have contribution.   If so advised the county may of course bring its independent action against the driver of the car on the ground that his alleged negligence jointly contributed to the plaintiff's injuries.   But in our judgment the interests of justice would not be served by requiring the plaintiff to await the delay which would be caused by the proceeding suggested by appellant.

*By the Court.*—Judgment affirmed.