# A. O. MOLDEN v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

November 7, 1924.

No. 24,120.

**Wrongful death at grade crossing—high speed of train—negligence of driver—charge to jury wrong.**

In this action to recover for the wrongful death of plaintiff's intestate, at a grade crossing in a village, the negligence charged was running the train, which collided with the vehicle wherein decedent was riding, at excessive speed, without giving the statutory warnings, and without automatic signals, gates or watchman at a hazardous crossing. It is *held*:

(1) High speed may not in itself constitute actionable negligence, but may be such when considered in connection with absence of statutory warnings or safety devices at dangerous and much used crossings in a village. The particular acts of negligence charged were for the jury.

(2) The evidence justifies the findings that the negligence of the driver of the automobile in which decedent was riding was not the sole proximate cause of the latter's death.

(3) The contributory negligence of decedent was a jury question.

(4) The driver and decedent were not engaged in a joint enterprise at the time of the accident so as to impute the driver's negligence to the latter, but the evidence made it a jury question whether the driver was the servant or agent of decedent and hence it was error to instruct that the negligence of the driver was not imputable to decedent.

Action in the district court for Stearns county by the administrator of the estate of Lewis Iverson, deceased, to recover $7,500 for the death of his intestate. The case was tried before Roeser, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,800. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

[1]Reported in 200 N. W. 740.

*Bennett & Jones, C. J. Gunderson* and *John E. Palmer*, for appellant.

*Donohue & Quigley* and *Frank Tolman*, for respondent.

HOLT, J.

The appeal is from an order denying defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action was to recover for the death of plaintiff's intestate, Lewis Iverson, alleged to have been due to the negligence of defendant causing one of its passenger trains to collide with the automobile in which he was riding, the car being driven by its owner, Ed Iverson, a brother of Lewis. The place of the fatal collision was where Central avenue in the village of Brooten is crossed by the main track of defendant's railroad, and occurred at 2:08 p. m. on August 11, 1922. The train was an east-bound through train, scheduled not to stop at Brooten. The population of the village is about 700. Central avenue is the main street and runs north and south. Defendant's right of way crosses this street at an angle of 49 degrees, running from the northwest to the southeast. The stores and residences are mostly to the south of the tracks. There are some industries north of the right of way and east of Central avenue, but none to the west thereof north of the tracks. Lewis Iverson, 49 years old, lived on a farm south of Brooten. The brother Ed, 56 years old and unmarried, was at times a member of Lewis' household. Ed owned a Chevrolet touring car. He worked for Lewis on August 9 and 10. On the eleventh, as Lewis was about to hitch up his team to go to Brooten with a can of cream and for some supplies and repairs, Ed suggested that, since he also wished to go to town, the trip could be made in his automobile. This was done. The cream was delivered at the creamery and Ed drove to the various places in Brooten where Lewis had business to transact. This finally took them north of the defendant's railroad and east of Central avenue to the Swift & Company plant, a little east of the depot. The road from there runs westerly in an irregular course some 200 feet distant from defendant's main track, and, as this

road approaches Central avenue, it curves to the south, joining the latter upon defendant's right of way. One driving over this road intending to cross the railroad, as did Ed Iverson at the time in question, has a clear view of a train approaching from the west at every point after it is within 1,700 feet of the crossing and after he is within 100 feet of the main track; and this clear and unobstructed view continues every inch from there on to the crossing, unless there should be cars upon the passing track which is 16 feet north of the main track, but on the day in question no cars were upon the passing track. The evidence tends to show that, as Ed was driving on the road mentioned and was within about 80 or 90 feet of the main track crossing, Lewis, who sat at his right, called out "there is the train;" that Ed either did not understand what he meant, or got excited and stepped on the accelerator; that Lewis then rose up and opened the door, at which moment Ed noticed the approaching train and tried to swerve the car to the left, but the end of the pilot struck the front right corner of the car, stove in the radiator and shattered the windshield, a piece of which striking Lewis, severed his jugular vein, causing death. It appears that the speed of the train was around 50 miles an hour at the time, and Ed testified the car was driven at the speed of about 15 miles an hour as he neared the tracks.

Defendant insists that it should have judgment because no actionable negligence was proven against it; that the negligence of Ed Iverson was the sole proximate cause of Lewis' death, and that the latter's contributory negligence conclusively appears.

Plaintiff charged defendant with running at a negligently high speed without sounding the whistle or ringing the bell, and without providing automatic signals, gates or watchman at this dangerous and much used crossing. High speed may not in itself constitute negligence, but when considered in connection with the absence of warnings of a train's approach to a dangerous city or village crossing it may be of much significance. There was sufficient conflict in the evidence so as to make it a fact for the jury to determine whether there was a failure to sound the whistle or ring the bell for the crossing. We are also of the opinion that, as a question of

law, it should not be said that the crossing is one which requires no other warning than the statutory signals and the usual signboard. On the average 16 trains passed over Central avenue every 24 hours. Four were nonstop passenger trains going at the rate of upwards of 50 miles an hour. This is the same crossing referred to as dangerous in Liabraaten v. Minneapolis, St. P. & S. S. M. Ry. Co. 105 Minn. 207, 117 N. W. 423, 15 Ann. Cas. 1147. It is much used. When railroads send trains at a high speed through a village of a considerable size across much traveled streets, it is ordinarily for a jury to say whether or not due care requires a dangerous crossing therein to be provided with automatic signals, gates or a watchman. At least, absence of such safety devices and measures bears upon the question of negligence in running at a high speed. Lawler v. Minneapolis, St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882; Zenner v. Great North. Ry. Co. 135 Minn. 37, 159 N. W. 1087.

While the evidence is somewhat confused as to what use Lewis made of his senses to discover the approach of the train, the jury could find that he did discover it before the automobile had gone more than 15 or 16 feet of the distance from the point where the occupants first could obtain a clear view of the train, and that he at once warned the driver. It is clear the latter was negligent, for, according to his own story, he did not look to see whether a train was coming until within 10 or 12 feet of the tracks, or so close that he could neither stop nor swerve the car from the path of the locomotive. But the jury could find that Lewis' discovery of the train was timely as well as his warning to Ed, so that the latter had ample opportunity to stop before even reaching the passing track. It was also for the jury to say whether Lewis took the measures for his own protection that an ordinarily prudent person would have taken, after Ed failed to heed his warning. The only witness besides an 8-year-old boy who testified to what Lewis did just prior to the collision was Ed, and his testimony came haltingly through an inefficient interpreter. Lewis being dead, the presumption is that he used due care to protect himself, until the contrary appears. Here the physical facts demonstrate that he had an oppor-

tunity to see the train in time to avert collision and, had the evidence not shown that he did see it and did whatever the ordinarily prudent person would do to avoid injury, there could have been no recovery. But, as already stated, we think this was a jury question.

The jury having a basis for finding defendant negligent in the particulars charged and the decedent free from contributory negligence, it cannot be held as a matter of law that Ed's negligence was the sole cause of the fatal collision. Had defendant given proper notice of the swift moving train's approach to this dangerous crossing, the jury could find that Ed's attention would have been aroused in time to avoid the danger. As it was, the negligence of both concurred in causing Lewis' death. Gowan v. McAdoo, 143 Minn. 227, 173 N. W. 440, and cases therein cited. From the time Lewis called out to Ed and he failed to act, the negligence of both Ed and defendant was in operation and continued thereafter to cooperate to bring about the collision, so that Ed's negligence cannot be said to be the sole proximate cause of his brother's death. For reasons hereinbefore stated we do not think defendant entitled to judgment non obstante.

The learned trial judge held as a proposition of law that Ed's negligence was not imputable to Lewis and so charged the jury. Error is assigned upon this instruction. One riding in a vehicle without any right of control over the driver's management thereof is not chargeable with the driver's negligence when such negligence concurs with that of a third person to cause injury to the one riding. Dunnell, Minn. Dig. § 7038 and cases therein cited. But it is also the law that the negligence of a servant or agent is imputable to a master or principal who is plaintiff in injury actions. La Riviere v. Pemberton, 46 Minn. 5, 48 N. W. 406; Kokesh v. Price, 136 Minn. 304, 161 N. W. 715, 23 A. L. R. 643. Also, if the rider and the driver are engaged in a joint enterprise in the trip, the latter's negligence may be imputed to the former so as to defeat a recovery. At the trial the point was strongly pressed that the two brothers took the trip as a joint enterprise. We think the cases of Kokesh v. Price, supra, Finley v. Chicago, M. & St. P. Ry. Co. 71 Minn. 471, 74 N.

W. 174; Praught v. Great Northern Ry. Co. 144 Minn. 309, 175 N. W. 998, are conclusive that there is no evidence here warranting the submission of a joint enterprise in this trip. Insofar as Davis v. Chicago, R. I. & P. Ry. Co. 159 Fed. 10, 11, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424, tends toward a different conclusion, we cannot follow it. It does not appear that Ed had any object in going to Brooten. Each errand executed was that of Lewis alone. The existence of the relations of master and servant or principal and agent was not suggested at the trial, but was presented upon the motion for a new trial, and is raised here by the error assigned upon the instruction that the negligence of Ed was not imputable to Lewis. If from the evidence the jury could find that Ed was the servant or agent of Lewis the instruction was wrong. Upon the two days before the trip to Brooten, Ed worked for Lewis hauling grain from the thresher. On the day in question rain stopped threshing. Lewis had several matters to attend to at Brooten; Ed had none so far as the evidence discloses. In Brooten Lewis directed where to drive. He cranked the car. He loaded it as he wished. It does not appear that there should be any compensation, but that is not absolutely essential to the relation of servant or agent. We are of the opinion that the jury should have been allowed to determine whether on this trip Ed was the agent or servant of Lewis, and if found to be such there could be no recovery.

There are errors assigned upon many portions of the charge. We discover no serious defects calling for criticism from defendant. The one directing the jury to consider obstructions to the view of the train such as cars on the passing track, was plainly for the purpose of determining whether this was an extra hazardous crossing requiring automatic bells, gates or watchman, and was not descriptive of the obstructions the occupants of the car had on that day to a view of the train.

For the error in ruling as a matter of law that the negligence of Ed could not be imputed to Lewis Iverson there must be a new trial.

STONE, J. (concurring in part.)

I concur with Mr. Justice Holt, except that I think the case fairly within the principal of the "joint enterprise" cases.

WILSON, C. J. (dissenting.)

I dissent to that part of the opinion that holds that there is sufficient evidence to take to the jury the question of whether the driver of the auto was the agent or servant of the deceased.