ERNST HELDMAIER

*v.*

ROBERT COBBS.

*Opinion filed February 21, 1902.*

1. APPEALS AND ERRORS—*weight of testimony cannot be considered in reviewing action on peremptory instruction.* If the evidence on any given point fairly tends to support the plaintiff's theory of the case, the Supreme Court is bound to treat such facts as established by the evidence in reviewing the trial court's action on the defendant's peremptory instruction to find in his favor.

2. MASTER AND SERVANT—*servant invited to eat his dinner at certain place is not a mere licensee.* If the master directs his servants to leave their tools and dinner buckets at the boiler house during cold

weather, such direction amounts to an invitation for the workmen to eat their dinners at the boiler house, and they are not mere licensees while so doing.

3. SAME—*servant does not cease to be in master's employ during dinner hour.* A workman employed by the day, at so much an hour, does not cease to be in the master's employ during the hour he is allowed in which to eat his lunch.

4. LAW AND FACT—*what questions are settled by Appellate Court's judgment of affirmance.* Whether plaintiff's injury resulted from the negligence of a fellow-servant, and whether plaintiff had such knowledge of the danger as to bring him within the rule of assumed risk, are matters conclusively settled by the Appellate Court's judgment of affirmance.

5. INSTRUCTIONS—*when instruction is not misleading.* An instruction is not misleading, as ignoring the defenses made, which informs the jury that if they believe, from the evidence, that the plaintiff was employed to work for defendants, "as stated in the declaration, and that while he was engaged in the duties of such employment he was injured and sustained damage, as complained of in the declaration; * * * that the defendants were negligent in the respect charged in the declaration; that the said injury to plaintiff was caused by said negligence of the defendants, as charged in the declaration, and that the plaintiff, at the time of the injury, was in the exercise of due care and caution for his own safety, then you should find for the plaintiff." (*Gorrell* v. *Payson*, 170 Ill. 213, distinguished.)

*Heldmaier* v. *Cobbs*, 96 Ill. App. 315, affirmed.

WRIT of ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

J. L. O'DONNELL, for plaintiff in error.

JAMES R. FLANDERS, and PETER SHUTTS, for defendant in error.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is a writ of error to the Appellate Court for the Second District to reverse an affirmance in that court of a judgment of the circuit court of Will county for $1250

in favor of defendant in error, against plaintiff in error. The original declaration was against the firm of Heldmaier & Neu, but the latter having subsequently died, it proceeded against the plaintiff in error individually. The action was in case for negligence by the defendants, resulting in an injury to the plaintiff.

The original declaration averred that the plaintiff was in the employ of the defendants, who were contractors engaged in excavating on the drainage canal in that county; that while he was engaged in and about the work and business of the defendants, the latter, by certain servants who were not fellow-servants of the plaintiff, then and there negligently and carelessly allowed and permitted explosive caps, used for the purpose of exploding dynamite in the said work of excavation, to be carelessly, negligently and improperly exploded and discharged, whereby the plaintiff, who was in the exercise of due care, was then and thereby greatly injured, etc. After a plea of not guilty had been filed, the plaintiff was given leave to file an additional count, which, after stating the employment as in the first count, alleged that in said work dynamite was used for blasting purposes, and exploding caps to explode the said dynamite, and at the place of and in the said work used a boiler and engine and a boiler house; that on the said day, at the place of the work aforesaid, he was in the employment of Heldmaier & Neu as a servant of the said firm in and about said work of excavation, and it then became and was the duty of Heldmaier & Neu to use due care to keep the place where plaintiff was so employed reasonably safe to and for the plaintiff, but that they disregarded said duty, permitting and allowing certain of the exploding caps used in said work carelessly and negligently to be kept and stored in and about the place where plaintiff was employed, as aforesaid, and by reason of such carelessness and negligence, and while the plaintiff was in their employ, as aforesaid, certain of said

exploding caps were discharged and exploded by coming in contact with live coals and fire drawn and thrown out from the fire-place in the said boiler house of the said Heldmaier & Neu, whereby the plaintiff, who was then and there in the exercise of due care and caution in his own behalf, was struck by certain of said caps so exploded and discharged, and greatly bruised, hurt, wounded, etc.

Most of the questions which are discussed by counsel for plaintiff in error arise upon the assignment of error that the trial court erred in denying defendants' motion, at the close of all the evidence, to instruct the jury to find the defendants not guilty.

The case is peculiar in its facts. There is no controversy as to the plaintiff having been employed by the defendant in the work of excavation on the drainage canal; that his duties were to assist a drill-runner; that holes were made by the drill for the purpose of receiving dynamite in exploding rock and other material necessary to be removed; that in connection with the means employed in exploding the dynamite, caps were used, of the size, in diameter, of an ordinary wooden pencil, containing explosive matter, in which were attached wires of different lengths, intended to reach to the surface of the drill holes. The plaintiff was employed to work at night, beginning at 6:30 P. M. and working until 5:30 the next morning, with an hour in which to rest and eat his lunch, extending from 11:30 to 12:30. The drills were operated by steam, generated by a small engine enclosed in what is called a boiler house, about forty feet from the drills. This building was eight or nine feet square and covered over with rough boards. The fireman in charge of the engine or boiler fed it from a pile of coal outside of the house. There was a doorway in front of the place where the fire was made, but no door was used. On one side of the house was a bench along the side of the room. Over the doorway was a plate four by four. It was the cus-

tom of the fireman to clean out his fires during the hour in which the workmen rested and ate their lunch. This he did by standing outside of the building and raking the coals and cinders from the furnace with a hoe with a long handle. On the 11th of January, 1899,—the night of the accident,—the plaintiff had gone to the boiler house soon after 11:30 o'clock and was sitting on the seat above mentioned, eating his lunch. The fireman was cleaning his furnace, when, from the hot coals and cinders raked out in front, there was a sudden explosion, from which small pieces of brass, resembling that of which the explosive caps were made, were thrown in the plaintiff's face and eyes, and one or more pieces were afterwards extracted from one of his legs. He was rendered unconscious and taken from the place, finally to a hospital, where the pieces of metal were extracted, the result being the loss of the sight of his right eye, the sight of which was entirely destroyed, though no disfigurement appears. After the accident occurred, near the door of the boiler house wires similar to those attached to the caps were discovered. The evidence on behalf of the plaintiff establishes the fact that on the plate above the door, at different times, one or more bunches of these caps were seen, one witness testifying that he saw them there several times and as late as three nights before the accident, and another that he saw them there several times prior to the accident, the last time being some three or four nights before the accident.

From this point the evidence is in irreconcilable conflict, but that introduced on behalf of the plaintiff shows that the superintendent, Albert Wernle, had notice of the fact that caps were being left in the boiler house and was requested by the fireman to have them removed. Watkin Dandridge, who was the drill-runner assisted by the plaintiff, says: "Yes, sir; Albert knew of these cartridges being about the building before Cobbs was hurt. * * * The way I knew that Albert knew these cart-

ridges were in there, I heard the fireman tell him. The fireman told him the fellows put exploders in there, and powder, too, and he told him he wanted to make them keep them out of there; it was no place for it." Charles E. Baumgartner, another drill-runner on the night force, testified: "Prior to the explosion I saw cartridges lying up over the door on the cross-piece, * * * several times. They were in bunches, wrapped something like fishing line. About a week before the explosion I carried out a box of dynamite, and another one, perhaps half or a little over, stood on the back end of the building, and I told Albert about it. * * * I told him they were keeping some dynamite in there, them day men, and I carried it out the back end of the building, and he said he would have a man right down there and take it away."

Whatever might be our conclusion as to the weight of the evidence upon the controverted questions whether these caps had been placed over the door by some one in the employ of the defendant, and that the fact was known to the superintendent, Albert Wernle, there can be no serious question that the evidence tends to establish both those facts. The plaintiff, and Dandridge, with whom he worked, and Baumgartner, all testified that Mr. Wernle, the superintendent, directed them to keep their tools and dinner pails in the boiler house, and Dandridge says: "He said it would be a little pleasanter to eat in there than it would be out doors, and to put all the pipe fittings, unions and sleeves, and pieces of pipe and the wrenches we didn't use, to keep them all in, so that if it would happen to snow before the next shift came on, that they would not be covered up on the snow." It is true that this testimony is squarely contradicted by the superintendent and perhaps by other evidence; but while counsel seems to discuss the weight of the evidence, he concedes that, as a matter of law, we have passed the point where the weight of the testimony can be considered. If the evidence on any given point fairly

tends to support the plaintiff's theory of the case we are bound to treat that fact as established by the evidence.

Assuming, then, that the foregoing facts have been proved, plaintiff in error insists, first, that plaintiff below should be treated as a mere licensee upon the premises, and therefore not entitled to recover. His proposition is: "If an employee ceases work and for his own convenience or pleasure goes upon a certain part of the premises other than that in which he is working, be becomes a mere licensee, and the master is not liable for injuries to him due to a defect in that portion of the premises." Without conceding the correctness of the proposition as applied to all cases, it can have no application to this case, the plaintiff having gone to the boiler house not merely as a matter of his own convenience or pleasure, but by invitation of the superintendent of the defendant. We do not attach so much importance to the testimony of Dandridge as to the statement that it would be better to eat their dinners there. It was in the extreme cold winter weather. Being told to leave their dinner buckets in the house, where, in the absence of these explosives, the workmen could eat with safety and more comfort than they could out doors, the direction to leave their buckets there amounted to an invitation for them to go there and eat their meal. Besides that, they were directed to leave certain of the tools and appliances used in the prosecution of their work in that place, and must have been expected to go there as occasion might require, to get them. The authorities cited by counsel in support of the foregoing proposition are distinguishable from this case in that here there was an invitation by defendant to plaintiff to be in the place where he was injured.

It is again insisted that the plaintiff was not, at the time of the injury, engaged in the work and business of the defendant. The contention on this branch of the case is, that inasmuch as he was employed to work by the hour, and that he was not paid for the noon hour, or

from 11:30 to 12:30, and was not during that time engaged in his usual labor, he was not in the defendant's employ. This position we regard as wholly untenable, even upon the defendant's theory of the evidence. It is true, he was paid by the hour, but he was required and expected to work ten hours each night. Because he ceased work for one hour to rest and eat his dinner he did not cease to be in the employ of the defendant, any more than one employed to work by the week or month ceases to be in the service of his employer during the time he takes his meals. Moreover, the evidence tends to show that he was required to remain there during that hour, in order to see that the pipes did not freeze up, etc.

Whether the injury resulted from the negligence of a fellow-servant, and whether plaintiff had such knowledge of the situation and danger from the explosives as to bring him within the rule of assumed risk, are features of the case which have been settled by the judgment of the Appellate Court.

The court, at the instance of the plaintiff's counsel, gave instruction No. 1, which told the jury "that if they believed, from the evidence, that the plaintiff was employed to work for the firm of Heldmaier & Neu, as stated in the declaration, and that while he was engaged in the duties of such employment he was injured and sustained damage, as complained of in the declaration; that said firm of Heldmaier & Neu were negligent in the respect charged in the declaration; that the said injury to plaintiff was caused by said negligence of the defendants, as charged in the declaration, and that the plaintiff, at the time of the injury, was in the exercise of due care and caution for his own safety, then you should find for the plaintiff." It is contended that this instruction was calculated to mislead the jury, in that it ignored the defenses relied upon by plaintiff in error. It is wholly unlike the instruction in *Gorrell* v. *Payson*, 170 Ill. 213, cited and relied upon by counsel. In the latter case the court under-

took to state to the jury the facts which, if proved, would entitle the plaintiff to recover, and it was held to be erroneous because it entirely ignored two grounds of defense relied upon by the appellant. This instruction we have held imposes upon the plaintiff the burden of establishing all the elements necessary to constitute the cause of action. In *Chicago, Milwaukee and St. Paul Railway Co.* v. *O'Sullivan*, 143 Ill. 48, we said (p. 59): "The court instructed the jury that if they believed, from the evidence, that the plaintiff had made out his case as laid in his declaration, then they should find for the plaintiff. This imposed upon the plaintiff the burden of establishing all three of the elements necessary to constitute the cause of action: the negligence, the consequent death, and ordinary care on the part of the deceased." *Lake Shore and Michigan Southern Railway Co.* v. *Johnsen*, 135 Ill. 641; *Illinois Central Railroad Co.* v. *Gilbert*, 157 id. 354.

We do not regard *Joliet Steel Co.* v. *Shields*, 134 Ill. 209, when considered in the light of the allegations of that declaration, as in any way conflicting with what is here said.

We are at a loss to understand what is meant by counsel in his statement that this was the only instruction upon the right of recovery, and that no instruction was given on the part of the defendant covering the grounds contained in the instruction referred to. The defendant's theory of the case, upon each and every branch thereof, was given to the jury in clear, comprehensive and positive instructions.

We find no substantial errors of law in this record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*