# CASES

DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1906.

---

### Illinois Central Railroad Company v. Rosario Panebiango.

#### Gen. No. 4,639.

1. MASTER AND SERVANT—*what does not destroy relation of. Held*, under the circumstances shown in this case, that the servant, though temporarily absent from his usual duties because of illness, was nevertheless a servant within the meaning of the law to whom the master sustained the ordinary legal obligations of a master.

2. MASTER—*duty of, to make rules and regulations.* It is the duty of the master to make all reasonable and proper regulations for the safety of its employes, having regard to the situation in which such employes are placed, and whether this duty in a particular case has been performed is a question of fact for the jury.

3. DECLARATION—*when cannot be complained of.* A declaration cannot be complained of as defective or insufficient where it was not demurred to and where no motion in arrest of judgment was made.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed October 16, 1906.

D. B. SHERWOOD, for appellant; J. M. DICKINSON, of counsel.

GEMMILL & FOELL, for appellee.

(1).

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Rosario Panebiango was a laborer in the employ of the Illinois Central Railroad Company at Newbern, Tennessee. On February 13, 1904, while he was passing underneath a boarding car in which he lived, it was moved by other cars pushed against it, and the car wheels passed over him. He lost his left leg a little below the hip, and three or four toes from the right foot, and his left arm was broken. He brought this suit against the railroad company to recover damages for said injuries, and recovered a verdict and judgment for $5,000, from which the company appeals. It was admitted on oral argument that the damages are not excessive.

The proof introduced by appellee tended to show the following facts: Appellant engaged a number of Italian laborers in Chicago for certain repair work on its tracks at different points. It provided boarding cars for them to live in. These cars were fitted up for housekeeping, and supplied with stoves, dishes and bunks. The men kept their clothing and trunks in these cars. Appellee was a member of this crew. The number of men in the gang changed from time to time. There were thirty-five when they left Chicago, and twenty-five when at Newbern. They went from Chicago to Carbondale and worked there about a month; then went to Mounds and worked there half a month; and then worked in Cairo about a month, and then went to Newbern, Tennessee, and the preponderance of the proof is that they had been there seventeen or eighteen days when appellee was injured. During all this time the men lived, ate, cooked and slept in these boarding cars, which were provided by appellant for that purpose. The men furnished and cooked their own provisions, and appellant had no connection therewith. There were at Newbern four railroad tracks owned and operated by appellant. The west

one was a passing track. The next two were the main tracks, north and south-bound respectively. The east one was known as a storage track. The east and west tracks, therefore, were switch tracks, beginning and ending at or near that station. Some witnesses gave the length of the storage track as a quarter of a mile, while others testified it was half a mile long, and others a mile. A witness for appellant testified it would hold about 100 cars. At each end it connected with the east main track. These boarding cars were ordinary box cars and had a door on each side. The east doors were, however, kept nailed up, and ingress and egress was had only from the west side. A ladder had been built by appellant at each door on the west side to enable people to go in and out. There were five cars occupied by the gang to which appellee belonged. Other laborers were working at Newbern who had eight boarding cars. These thirteen boarding cars were placed on the storage track, somewhere near the middle of it, and they were all coupled together and the brakes were kept set. The cars of appellee's gang were at the north end of the string, and the car in which appellee lived and cooked was the fourth or fifth from the north end. On the day of the injury to appellee there were other cars standing on the storage track north of the boarding cars and some little distance from them. While the men cooked in their cars, they did not bake there. A short distance east of the storage track was a high bank. These men dug two holes in this bank, which they called ovens. They kindled a fire in an oven and set over it a dish of dough ready for baking, and in that way baked their bread. There was a stream of water a little further east, and the men got their water for domestic use from that stream. As the men could come out of their cars only on the west side, they had to find some way to get to the bank and to the water on the east side. Their habit was to go underneath their boarding cars to get

to the east side. They had to get water every day. Each person baked only once in several days, but as they had but two of these ovens, some one was baking in them nearly every day. Appellee's gang had an American and an Italian boss or foreman. The Italian boss was named Frank Simone. He hired the men and lived with them in one of the boarding cars. The foremen were around there when the men crossed under the cars, and knew that they went under the cars on the way to the oven. The Italian boss told the men to go under the cars to go to the oven, but told them to watch out and look out if they saw an engine. All of appellant's employes on the work train which caused the injury and all the employes about that station knew that the Italian laborers lived and cooked in these cars. It was a common thing for a train to set in loaded cars at one end of the storage track for the use of the work train, which took them out and hauled them to the point where they were to be unloaded, and also for the work train to set empty cars in at the other end of that track for removal by regular trains. On two occasions before the accident cars so set in had been driven against the boarding cars. On February 13, 1904, appellee was ill and did not go to work. In the afternoon he prepared to bake bread, and about four o'clock he put his dough upon a board, got out of the car on the west side and started under the car with the dough, intending to go to the oven and bake it. The work train set in some cars at the north end, pushed them against the loose cars north of the boarding cars, and while appellee was under the car, drove the loose cars against the boarding cars with such force as to drive the boarding cars with brakes set about sixty feet and to knock down a stove and dishes and other articles in the cars. The wheels passed over appellee and injured him in the manner already stated. Before going under the car appellee did not look to see if any cars were being pushed upon

the storage track, nor did he see any cars in motion or hear any sound. He, however, knew that the brakes were kept set upon this string of boarding cars.

There is no merit in the contention that appellee was not in the employ of appellant because he happened not to be working that day. Heldmaier v. Cobbs, 195 Ill. 172. He was in the regular employ of appellant; was paid monthly when the pay car came along; and was furnished by appellant with a car in which to cook, eat, sleep and live for months at a time. The relation of employer and employe, and the right of appellee to occupy the car, did not cease because of his temporary absence from work on account of illness. The engineer, conductor and crew of the work train knew that these laborers lived in these boarding cars, and knew that they were not only about the cars mornings, nights and rainy days, but also on days when they did not work. The brakeman who gave the signals which resulted in the collision testified that he did not intend to strike these cars. The directions of the Italian boss gave appellee the right to go under the cars to reach the oven. Whether appellee ought to have looked before going under the car to see whether any train was backing in at either end of the storage track and was liable to strike and move his car, was a question of fact for the jury. The duty of appellant required it to make all reasonable and proper regulations for the safety of employes, situated as appellee was. I. C. R. R. Co. v. Hoffman, 67 Ill. 287; C. & N. W. Ry. Co. v. Taylor, 69 Ill. 461; North Chicago R. M. Co. v. Johnson, 114 Ill. 57; C. & N. W. Ry. Co. v. Goebel, 119 Ill. 515; Chicago Junction R. R. Co. v. McGrath, 203 Ill. 507. Whether appellant performed that duty, and exercised the care required of it by the law, was a question of fact for the jury. The trial court properly denied motions to instruct for appellant at the close of appellee's case and at the close of all the evidence.

Appellant's proof contradicted some features of that put in by appellee. Some of appellant's witnesses testified that the doors on the east side of the' boarding cars were often open; that there were also steps to get down on that side; that the two strings of boarding cars were not coupled or joined together, so that appellee could easily have gone around his car instead of passing under it; that the boarding cars were moved by other cars every day or very frequently and that at the time in question the boarding cars were moved only about thirty feet. It was the proper office of the jury to determine which witnesses should be believed, and the record would not warrant our disturbing their conclusions upon questions of fact. It was not denied that the Italian foreman authorized and directed these laborers to pass under their cars to reach the ovens. The proof showed he had returned to Italy, but appellant did not take his deposition, or ask for a new trial in order to take his deposition to refute that testimony. This direction and authority to pass under the cars to reach the oven stands uncontradicted. Appellant was bound by such instruction, and appellee had a right to act thereon.

Objection is made to rulings of the court upon the admission of testimony. As to most of these contentions we think it sufficient to say that upon the whole record we find no reversible error in such rulings. Frank Datello was asked: "Was Frank Simone around the cars there when the men went under the cars to go to the oven?" He answered: "He told us to go under the cars there, and to go to the oven; he told us, only he said 'watch,' he says 'if you see an engine or anything then look out.' " Appellant's attorney then said: "The answer is objected to as being incompetent and irrelevant, as it does not show that Simone had any authority to bind the company by his instructions concerning their action when not at work." This objection was at first sustained, but

I. C. R. R. Co. v. Panebiango.

afterwards overruled. If the objection had been that the answer was not responsive to the question, it would have been sustained, and another question put to obviate the objection, but the only objection was that the answer did not show that Simone had authority to bind the company by such instructions concerning the conduct of the men when not at work. Other proof had already shown that Simone was the Italian foreman, and we are of opinion that his authority was not limited to the hours when the men were at work. The company furnished these cars in which the men should sleep, and stoves upon which they should cook, and dishes for their table, and a foreman who lived with them, and we consider it altogether too narrow a construction of the relations between appellee and appellant to say that it had no responsibility for or control over the men except during the hours when they had shovels, picks and spades in their hands. If in any respect the rulings upon objections to testimony were inaccurate, such testimony was unimportant or the error was cured by other proof.

The declaration is seriously criticised. But appellant pleaded the general issue thereto, and did not move in arrest of judgment, and did not in any way question the sufficiency of the declaration in the court below, so far as the abstract discloses. We consider its allegations amply sufficient to support the verdict under such circumstances, and if some allegations were not sufficiently established, proof was offered of enough of its allegations to make a case for appellee. The judgment will, therefore, be affirmed.

*Affirmed.*

Mr. Justice WILLIS, having heard this case in the lower court, took no part in its decision here.