JOHN TIJAN, Defendant in Error, *vs.* THE ILLINOIS STEEL COMPANY, Plaintiff in Error.

*Opinion filed June 20, 1911.*

1. MASTER AND SERVANT—*a servant does not cease to be a servant during rest periods.* Where two servants work alternately for thirty-minute periods during the twelve hours of their employment they do not cease to be servants during their rest periods, and the master is liable for a negligent act performed by one servant during his rest period if the act is one for which the master would be responsible if done by the servant while on duty.

2. SAME—*master liable where servant performs a duty at the wrong time.* If the act done by a servant is one which he is employed to do the master is responsible for the negligence of the servant in doing the act at the wrong time, whether it was done intentionally or accidentally.

3. EVIDENCE—*what evidence not competent on the question of necessity for the master making rules.* Upon the question of the necessity for promulgating rules for the government of employees employed in the various mills of a large manufacturing plant, it may be proper to prove the situation in the mill where the injury to a workman occurred, the character of the machinery and number of men employed therein, but it is not competent to prove the extent of the entire plant and total number of men employed; but it is not necessarily reversible error to permit such proof.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Will county; the Hon. CHARLES B. CAMPBELL, Judge, presiding.

Defendant in error was employed by plaintiff in error in its steel mills in Joliet. While engaged in the line of his employment he was seriously injured and brought this suit to recover damages, charging in his declaration that said injuries resulted from the negligence of plaintiff in error. He recovered a judgment, which has been affirmed by the Appellate Court for the Second District, and the case is brought here by writ of *certiorari*.

We adopt the following statement of the case made by the Appellate Court:

"The appellee was employed by appellant as a member of a gang of men known as the 'sailor gang,' repairing a re-heating furnace in the billet mill in the appellant's steel works. A row of furnaces extended east and west. South of the furnaces, and about a foot from them, a narrow-gauge track extended east and west through the entire length of the row of furnaces. Upon this track a small but heavy iron car or ingot buggy, about two feet high and four feet long, was operated for carrying steel ingots. The space between the furnace and the car was from six to ten inches, and there were some gear wheels on the side of the car that approached still nearer to the furnace. The car was moved by means of cables attached to each end that ran over drums at either end of the track. The power was furnished by electricity that moved the drum at the end towards which it was desired to move the car. The power was applied or controlled in a cage or shanty about seven feet square that was elevated somewhere from ten to eighteen feet above the track. There were two appliances in the cage which controlled the power that moved the drums.

The first appliance was an electric switch on the east side of the cage, about four and a half feet from the floor, for the purpose of cutting out the electric current from the controller. The switch was an ordinary fork-switch, about six or eight inches long and three or four inches wide. At the top or above the switch were two prongs or forks. The switch had a wooden cross-bar and two copper bars at right angles with it, which entered the forks to close the switch. The wooden handle was on the cross-bar and the lever ends of the bars were pivoted. The switch would be opened by pulling the wooden handle, so as to cause the connecting bars to come away from the prongs. The electrical connection would then be broken and the car could not be moved except when the switch was closed. The switch was open when the wooden handle stood out from the wall or hung down, and was only closed when the handle was upright above the forks. The other appliance was the controller, which was a metallic box about two and one-half feet long from east to west, with a lever extending out of the top, which moved east or west. When the lever stood upright in the center it was in a neutral position and the machinery did not move. If the lever was moved to the east when the switch was closed the car moved east, and if the lever was moved west from the center the car would move west. The further east or west the controller was moved the faster the car would move in that direction. There was also a lift, a steam lever, a whistle, a bench seat and a stove in the cage. The lift was to work another gearing which was upon the buggy, so as to remove the ingot off the buggy. The lever was to start the engine up to run the ingot off the rolls, and the whistle was to call for another ingot. These appliances were all operated by the man in the cage in charge of the controller and switch. The accident happened between one and two o'clock on the morning of December 10, 1907, while work in the billet mill had been suspended for about twenty minutes previ-

ously for want of material. The appellee, under the direction of his foreman, was at work with his gang repairing one of the re-heating furnaces while the billet mill was not running. The ingot buggy had been standing a few feet east of the furnace the gang was repairing. While the appellee was stooping down, lifting an iron rail, between the narrow-gauge track and furnace, the ingot buggy suddenly started west and caught appellee between the buggy and the furnace, rolling him in the narrow space and very seriously injuring him.

"The counts on which the trial was had severally allege that the appellant was negligent (1) in failing to exercise reasonable care in providing reasonable safety appliances or safeguards for a certain electric switch; (2) in failing to make, promulgate and enforce reasonable rules in warning and prohibiting its servants and persons on its premises from moving, starting or interfering with electric switches, controllers or appliances when the appellant's machinery was not in motion; (3) in failing to make, post or enforce rules preventing the assembling of servants in places where they were not employed; (4) in neglecting by its servants to move the switch a reasonably safe distance from the fork and to turn the switch in a downward position; (5) in failing to remove or blockade the car and prevent it from running on the track; and (6) in permitting its servants to assemble in the cage. Each count averred that appellee was in the exercise of due care; that the injuries did not result from an assumed risk and were not caused by the negligence of a servant who was a fellow-servant with appellee."

KEMPER K. KNAPP, R. W. CAMPBELL, and WILLIAM BEYE, (GARNSEY, WOOD & LENNON, of counsel,) for plaintiff in error.

JOHN W. D'ARCY, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Two grounds are urged for reversal of the judgment: First, that the proof fails to establish any liability on the part of plaintiff in error and the circuit court should have directed a verdict in its favor; and second, the circuit court erred in the admission of evidence.

The car which caused the injury was moved east and west by a controller in the shanty, which had the appearance of a metallic box. The power was electricity and was applied and disconnected by means of a switch in the shanty. When the lever was in the center of the controller the car would not move, even with the electric current applied. When it was desired to move the car west the lever in the controller was moved west, and when it was desired to move the car east the lever was moved east. When the switch was thrown out the car could not be moved by the controller. The switch was located on the east side of the shanty, about four and one-half feet from the floor, and was within reach of anyone who might be in the shanty. It extended six or eight inches out from the wall and there was no protection of any kind around it. When the controller was off the neutral position, opening or closing the switch would stop or start the car. The shanty was a small room about seven feet square, and in it there were a stove, and a bench about six feet in length, on which the operator could rest during the period he was relieved. The evidence shows that this shanty was frequented by other employees for the purpose of lounging. The electrical appliances were operated, on the night the injury occurred, by Leslie Fewtrell and William Erik, boys of the ages of seventeen and sixteen years, respectively. They went on duty at six o'clock P. M. and worked until six o'clock A. M. They worked alternately, thirty minutes at a time. Shortly after one o'clock, while Fewtrell was in charge of the appliances, the machinery was closed down, and he moved the controller to the neutral position and opened the switch

by pulling the handle out from the wall a few inches. At 1:30 o'clock, while the mill was still shut down, Erik took charge of the shanty and appliances therein and Fewtrell remained in the shanty during his rest period. Two other employees of plaintiff in error were also in the shanty at the time and occupied the bench used for resting upon. One of them moved so as to give Fewtrell room to sit near the stove, but it becoming too warm for him there he got up, moved the lever of the controller to the west as far as it would go, and sat on the controller. He had a stick in his hand at the time, and seeing the switch out of the forks, touched the handle with the stick and closed the switch. The controller having previously been moved to the west, the car shot forward on the track and struck defendant in error, very seriously injuring him.

We are of opinion that under the evidence the plaintiff in error was responsible for the negligent act of Fewtrell. This is stoutly denied on the ground that said negligent act was performed by Fewtrell during the thirty minutes of his rest period and while it was the duty of Erik to operate the appliances in the shanty. It is true, the lever of the controller was moved and the switch thrown in by Fewtrell during his period of rest, but it was during the hours of his employment. He was employed to work from six o'clock P. M. to six o'clock A. M., was paid for that time and during that time he was the employee of plaintiff in error. (*Heldmaier v. Cobbs,* 195 Ill. 172; Bailey on Personal Injuries, secs. 3208-3214.) The mere fact that every thirty minutes Fewtrell was granted a period of rest did not terminate his employment nor relieve the company from liability for acts performed by him, if the company would be liable for the acts if they were performed during the thirty minutes he was working. The act itself was within the scope of Fewtrell's duties. In fact, it was one of the duties which he was employed to perform, except that it was performed at the wrong time. Whether the

switch was closed accidentally or intentionally, it was done by the servant of the plaintiff in error and was within the scope of his duties, and being performed during the period of his employment the master is liable.

One count in the declaration charged plaintiff in error with negligence in failing to make, promulgate and enforce rules warning and prohibiting its servants and persons on its premises from moving, starting or interfering with electrical appliances when the machinery was not in motion, and another count charged negligence in failing to make, post and enforce rules preventing the assembling of servants in places where they were not employed. It does not appear that there were any such rules or warnings promulgated or posted, and for the purpose of showing the necessity for them, defendant in error was permitted, over the objection of plaintiff in error, to prove the extent of the plant of plaintiff in error and the number of men employed by it. Plaintiff in error's plant is composed of several different departments or mills. The injury to defendant in error occurred in one of its billet mills, and we do not think it was material to prove more than the situation in that mill, the character of the machinery and the number of men employed therein. We do not think it was competent to prove the number and character of other mills than the one in which the injury occurred or the entire number of men employed in the whole plant. The objection made to the proof when it was offered was that it was immaterial. While we think the evidence was not strictly competent, we are of opinion it was not so prejudicial as to require a reversal of the judgment.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*