## MILTON J. MOORE v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

June 13, 1913.

Nos. 17,986—(117).

**Question of negligence for the jury.**
1. A switchman riding on a car, and charged with the duty to keep a

[1] Reported in 142 N. W. 152, 143 N. W. 326.

---

Note.—For authorities on the question of injury to servant on master's premises before, after, or between hours of work, see notes in 12 L.R.A.(N.S.) 853 and 23 L.R.A.(N.S.) 954. And on the question of the effect upon master's liability for breach of statutory duty of fact that employee was resting at the time of injury, see note in 22 L.R.A.(N.S.) 309.

As to the status of an employee of railroad or street railway as a passenger while being carried to or from work, see notes in 31 L.R.A. 321; 12 L.R.A.(N.S.) 853; 19 L.R.A.(N.S.) 717; and 23 L.R.A.(N.S.) 954.

lookout for danger ahead, testified that he saw plaintiff come off of another car a car length ahead, walk straight onto the track, turn with his back to the approaching car and walk down the track in front of it for a distance of nearly 25 feet, and while the train was going nearly two car lengths. Plaintiff testified that he at first walked outside of the track, but that there was a pile of dirt, stone and cinders ahead that necessitated his stepping over on the track. The switchman realized that plaintiff did not know there was a train any place near him. The only warning he gave was a shout when the car was so close to plaintiff that he "didn't have time to look around." There was evidence of other witnesses that the engine bell was ringing, but it was manifest that plaintiff did not hear it. *Held* a question of fact for the jury whether there was negligence in not giving sufficient warning of the approach of the train.

**Negligence of fellow servant — statute construed.**

2. Plaintiff was a freight brakeman on defendant's line between Des Moines and Fort Dodge. The run was a night run each way. At Des Moines defendant regularly set the caboose out on a side track and permitted the men to sleep there by day. The usual time of leaving Des Moines was 8 p. m. On some days the train was taken over a grade in two sections, and on such days the men were subject to call about 4 p. m. *Held*, there was an invitation to the crew to use this car for sleeping purposes as an incident to their employment; while upon the same and while going to and from the same in obtaining meals, they are employees within the meaning of a statute rendering railroad companies liable to its employees for the negligence of fellow employees.

**Same — contributory negligence.**

3. A provision of the same statute that contributory negligence shall not bar a recovery, but that the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such. employee, is likewise applicable to an employee while so engaged.

Action in the district court for Ramsey county to recover $25,000 for personal injury. The complaint set out at length section 2071 of the Supplement to the Iowa Code of 1907, as amended by Laws 1909, c. 124, and section 2072. The facts are stated in the opinion. The answer alleged that plaintiff's injury was due to his own negligence and his failure to exercise ordinary care for his own safety. This allegation of the answer was expressly denied in the reply. The case was tried before Dickson, J., who, when plaintiff rested, denied defendant's motion to dismiss the action, and at the close of

the case defendant's motion to direct a verdict in its favor. The jury returned a verdict of $10,500 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed, and new trial granted.

*W. H. Bremner, F. M. Miner, Eugene Bryan* and *George W. Seevers,* for appellant.

*Barton & Kay,* for respondent. .

HALLAM, J.

Plaintiff was a brakeman on a freight train running between Des Moines and Fort Dodge, Iowa. The trip each way was a night trip and the crew rested by day. At Des Moines the caboose was set out on a short track known as stub track 3 in order that the members of the crew might sleep there. They did sleep there with the assent and approval of defendant. It appears that at times it was necessary to take the train out of Des Moines in sections as far as a station called Waukee, and on such days men were subject to call about 4 p. m.

The stub track 3 runs approximately east and west. To the south of it, at a distance of about 22 feet from center to center, is the main track of defendant. To the north of it, at a distance of about 12 feet from center to center, is switch track 2. Both the main track and switch track 2 run much farther to the east than stub track 3. At the east end of stub track 3 was a pile of stone, dirt and cinders called a "bumper," the use of which was to keep cars from running off the end of the track. Plaintiff claims this pile extended across the space between stub track 3 and switch track 2.

On the day in question plaintiff slept in the caboose as usual. In the afternoon he got up and started to a restaurant for his evening meal. He went out the rear or easterly door of the caboose, went down the steps of the caboose on the side toward switch track 2 and walked east. Just at this time an engine shoving a gondola car was approaching from the west. In some manner plaintiff walked over on track 2 and was struck from behind by this gondola car.

123 M.—13.

The action is brought under a statute of Iowa which renders a railway corporation liable to its employees for all damages sustained in consequence of the neglect of fellow employees. Plaintiff claims that this engine and car were being operated by defendant's employees negligently and without proper signals. Defendant denies this, and claims plaintiff's own negligence was the cause of the accident. Defendant further claims that plaintiff, at the time of his injury, was not in the line of his employment; that he was a mere licensee, and that defendant owed him no duty other than not to wilfully or wantonly injure him after receiving knowledge of the fact that he was upon the track. The court charged the jury that plaintiff was rightfully there; that "his journey through the yards at that time was reasonably necessary," and that it was defendant's duty to use ordinary care in giving signals of the approach of its engine and cars. The jury found a verdict for the plaintiff. Defendant moved in the alternative for judgment or a new trial. Both motions were denied and defendant appeals.

Both motions were properly denied.

1. The first question is, was plaintiff's injury due to the negligence of the trainmen. The negligence alleged in the complaint is, in substance, that defendant's employees in charge of this engine and car negligently operated them upon and over plaintiff without ringing any bell, blowing any whistle, or giving any warning to plaintiff; that such employees saw plaintiff upon the track and, nevertheless, ran said car upon and over him without notice or warning as above stated.

It is admitted that no whistle was blown. Plaintiff attempted to show that no bell was ringing. Plaintiff testified that he did not hear any bell. He further testified that his hearing was good and that there was no noise of any kind about there, nothing to prevent his hearing a bell ring, if one had been rung. He did not claim to be paying any attention to signals or warnings and was in fact admittedly indifferent to his surroundings. The engineer, the fireman and a switchman testified that the bell was rung. The rule is well established that testimony of a witness that he did not hear a bell ring is not of itself evidence that it did not ring as against direct and posi-

tive testimony that it did ring, unless there is evidence showing that the witness could and probably would have heard it had it been rung. Cotton v. Willmar & Sioux Falls Ry. Co. 99 Minn. 366, 369, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 Am. St. 422, 9 Ann. Cas. 935. If the case depended wholly on the question whether the bell was. ringing, we should hesitate to hold that negligence was proven.

We think, however, that, regardless of this question, there was suf- ficient evidence of negligence to sustain the verdict of the jury. The undisputed testimony shows that the witness Swift was riding on this gondola car, stationed, as he said, on "the end in front, the way we was going;" that it was part of his duty to "keep a lookout ahead to see if there was any danger." Swift testified that as he came to "about the west end of the caboose   *   *   *   Mr. Moore ap- peared on the east end of the caboose. He stepped off of the platform there with his face to the side toward us, turned square around with his back towards us and started down No. 2 track." He further said, "I hollered for him to look out.   *   *   *   Before I had hollered he didn't seem to know that there was a train any place near him. *   *   *   I hollered and he didn't have time to look around. He just threw up both hands and we hit him." When asked how far Moore was from the caboose when he was hit, he testified: "To the best of my judgment I would think about between 25 and 30 feet; that is, taking the distance between the two tracks and down," and that the distance between the two tracks was about six feet. In other words, this witness, who was charged with the duty of keeping a look- out for danger ahead, according to his own testimony, saw plaintiff come down the steps of the caboose a car length away, walk straight on to the track ahead, turn with his back to the approaching car and walk down the track in front of it, and that he permitted plaintiff to walk in this manner a distance nearly 25 feet, and while the train was going nearly two car lengths, and still gave no signal or shout until the car was so close to plaintiff that "he didn't have time to look around," although he realized all the time that plaintiff did not know there was a train "any place near him." Clearly the jury might find from the testimony of this witness alone the existence of negligence alleged in the complaint. This witness gave no testimony as to the

ringing of the bell. But, if the bell was ringing, the fact was clear to him that plaintiff was not aware of it. Under such circumstances it cannot be said that the ringing of a bell was the discharge of defendant's full duty. The jury might well find that a sharp blast of the whistle or even a shout at the proper time would have avoided this accident, and that reasonable care required some such warning to be given.

The evidence of plaintiff as to the course he took is somewhat different from that of Swift and, from the standpoint of negligence of defendant, not quite so favorable to himself. Plaintiff testified that he walked down *between* the tracks until he came to the "bumper," or pile of dirt, cinders and stone at the end of stub track 3; that he was then obliged to step "over into the flange of No. 2, to get out of the way of this pile of dirt." He testified that he went all told about a car length. If plaintiff took this course it must have been quite plain to witness Swift that he would step over upon the track when he came to the bumper as he in fact did, and the question of negligence in failing to give some further signal was for the jury.

2. The next question is, was defendant answerable to plaintiff for the negligence of the fellow employees in charge of the engine and car. There was, of course, no such liability at common law. This injury occurred in Iowa and the question of liability of defendant is determined by the laws of that state. The Iowa statute provides that:

"Every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employees thereof, and in consequence of the wilful wrongs, whether of commission or omission, of such agents, engineers or other employees, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed." Section 2071, 1907 Supp. of Code of Iowa.

This statute by its terms applies to "any person including employees." There was, of course, no necessity of a statute to render a railway corporation liable for the negligent acts of its employees to "any person" other than fellow employees. Such liability, except as

to fellow employees, existed at common law. The purpose and effect of the statute was to abolish the common law "fellow servant rule" and to render such corporation liable for the acts of employees to fellow employees to the same extent as to other persons.

The contention is made that at the time of receiving his injury plaintiff was not in the performance of any duty connected with his employment by defendant; that he was a "mere licensee," and that defendant owed him "no duty other than not to wilfully or wantonly injure him after receiving knowledge of the fact that he was upon the track." We cannot concur in this view. It is not necessary to consider the duties of a railroad company to "mere licensees," because we are of the opinion that plaintiff was not such, but that he was still an employee, though not working at the particular time he was hurt. This crew was furnished this caboose as a place in which to sleep, partly for their own convenience and partly for the convenience of the company. The usual leaving time of this train was 8 p. m. On the occasions when the men were obliged to take the train in sections from Des Moines to Waukee, they were on call and were subject to be called about 4 p. m. There was clearly an invitation to the men to use this car for sleeping purposes as an incident to their employment. In such case they are employed while upon said car and while necessarily going to and from the same. This rule is sustained by principle and authority.

In Rosenbaum v. St. Paul & Duluth R. Co. 38 Minn. 173, 36 N. W. 447, 8 Am. St. 653, men engaged in construction work were boarded and lodged at boarding cars of defendant stationed on a sidetrack, and were daily transported on the construction train to and from the boarding house and their work. A train had taken plaintiff and others from the place of work to the camp. Plaintiff had left his coat at the place of work and rode back on a loaded gravel train, with consent of the conductor, to get it. On the way back to camp on this train, plaintiff was injured by reason of a defect in the track. It was held that he was still an employee though not working at that time.

In Illinois C. R. R. Co. v. Panebiango (1906) 129 Ill. App. 1, it was held that a servant in the regular employ of a railroad com-

pany which furnishes him with a car to live in is in its employ while in and about the car.

In Moyse v. Northern Pacific Ry. Co. 41 Mont. 272, 108 Pac. 1062, it was held that a railroad company's duty to furnish employees a safe place applied to the case of a conductor in his caboose awaiting a call to work, although he is not paid for his time while there.

In International & G. N. Ry. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219, it was held that a member of a bridge gang, who was injured by a collision while in his car after his day's work was done, was still in the service of the company.

In St. Louis A. & T. Ry. Co. v. Welch, 72 Tex. 298, 2 L.R.A. 839, 10 S. W. 529, it was held that the foreman of a bridge gang, who was asleep on a side track in a car provided for that purpose, and who was liable to be called at any moment to go out with his gang upon the road, was on duty so far as to be, at the time, a fellow servant with the men operating a freight train, by whose negligence he was injured.

In Thomas v. Wisconsin Central Ry. Co. 108 Minn. 485, 122 N. W. 456, 23 L.R.A.(N.S.) 954, it was held that the relation of master and servant in so far as involves the obligation of the master to protect his servant while rightfully upon his premises, is not suspended, during the noon hour, when the master expects, and expressly or by fair implication invites, the servant to remain upon the premises in the immediate vicinity of the work. See also Olsen v. Andrews, 168 Mass. 261, 47 N. E. 90; Heldmaier v. Cobbs, 195 Ill. 172, 62 N. E. 853. We find nothing in the decisions of the Iowa courts inconsistent with this rule. See Smith v. Humeston, 78 Iowa 583, 3 N. W. 545.

3. Defendant contends that plaintiff was guilty of contributory negligence and that this bars his recovery. It is doubtless true that plaintiff was negligent, and that, but for the provisions of the Iowa statute, he could have no recovery. But this statute contains the following:

"* * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages

shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Section 2071, 1907 Supp. to Code of Iowa, as amended by Laws 1909, c. 124, § 1.

For the reasons above stated, we hold that plaintiff was an employee of defendant at the time he was injured. This section of the statute accordingly applies to his case, and his contributory negligence did not bar his recovery.

Order affirmed.

On October 24, 1913, the following opinion was filed:

PER CURIAM.

After due consideration of this cause on reargument, a majority of the court are of the opinion that there should be a new trial of the issue of defendant's negligence. This conclusion is prompted by the fact that the question of negligence made the turning point in our former opinion seems not to have been presented to the jury on the first trial. We adhere to the former opinion in all respects save what was said with reference to the negligence of defendant, leaving that question and that of damages, open issues on the new trial.

Order reversed and new trial granted.