C. A. HOLLISTER, ADMINISTRATOR OF THE ESTATE OF
ALICE HOLLISTER, DECEASED v. WALKER D. HINES,
DIRECTOR GENERAL OF RAILWAYS,
AND ANOTHER.[1]

October 28, 1921.

No. 22,387.

**When charge to jury is reversible error.**

1. Submitting to the jury a ground for recovery not justified by the evidence is reversible error.

**Railway — failure to provide gates or flagman at crossing.**

2. Unless required by some statutory enactment, a railway company is not negligent in failing to provide gates, or a flagman or other warning device at an ordinary crossing.

[1]Reported in 184 N. W. 856.

**Question for jury whether hazardous crossing should be guarded.**

3. Whether the dangers at a peculiarly and unusually hazardous cross-ing are such that ordinary care requires it to be guarded in some such manner, is a question for the jury.

**Charge to jury error.**

4. The crossing in question was not unusually hazardous, and instructing the jury that they could find defendant negligent for failing to guard it by gates, or a flagman or some other warning device, was error.

**Submitting issue to jury error.**

5. The evidence will not sustain a finding that the usual warning signals for the crossing were not given, and submitting this issue to the jury was error.

**Question of speed of train for the jury.**

6. There is evidence tending to show that the train was run over this crossing at an unlawful and unusual rate of speed, and whether defendant was negligent in this respect was a question for the jury.

**Contributory negligence.**

7. The evidence does not show conclusively that the deceased was guilty of contributory negligence or engaged in a joint enterprise with the driver of the automobile, and these questions were for the jury.

**Request to charge — train had right of way.**

8. The train had the right of way, and the men operating it had the right to assume that the automobile would stop in time to avoid a collision, and the court should have given the charge to that effect requested by defendant.

Action in the district court for Wadena county to recover $7,500 for the death of plaintiff's intestate. The answer alleged contributory negligence on the part of plaintiff's intestate in failing to take proper care and precaution for her own safety before attempting to cross and in failing to use her senses of sight and hearing. The case was tried before Roeser, J., who at the close of the testimony denied defendants' motion for a directed verdict, and a jury which returned a verdict for $5,400. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*M. L. Countryman* and *A. L. Janes,* for appellants.

*Byron R. Wilson* and *M. J. Daly,* for respondent.

TAYLOR, C.

The public highway, known as the Jefferson Highway, crosses the Great Northern Railway track within the corporate limits of the village of Wadena, but south of the built-up portion of the village. Plaintiff with his family, consisting of his daughter Alice, 19 years of age, and three younger children, resided on a farm a few miles south of the village. A married daughter, Mrs. McCormick, with her babe, eight months of age, was also at the farm on a visit. On August 23, 1919, Mrs. McCormick and Alice, taking the babe with them, drove to the village in plaintiff's automobile, a Dodge touring car. Shortly after 4 o'clock in the afternoon they started to return along the Jefferson Highway, Alice in the rear seat holding the babe and Mrs. McCormick in the front seat driving. At the crossing they were struck by a passenger train coming from the south and Alice and the babe were killed. Alleging that the accident resulted from the negligence of defendant, plaintiff, as administrator of the estate of Alice, brought this action for damages and recovered a verdict. Defendant made an alternative motion for judgment notwithstanding the verdict or for a new trial and appealed from an order denying it.

Plaintiff claimed that defendant had been negligent in three particulars: First, in running the train over the crossing at an unlawful and unreasonable rate of speed; second, in failing to give the usual warning of the approach of the train by blowing the whistle and ringing the bell; and third, in failing to maintain either gates, a flagman or a gong at this crossing. The court submitted these three claims to the jury and instructed them to the effect that plaintiff was entitled to recover if they found that defendant had been negligent in any one of the three particulars specified, and did not find that Alice had been guilty of contributory negligence. Submitting to the jury a ground for recovery which is not justified by the evidence is reversible error, for the jury may have based their verdict on that ground. Dunnell, Minn. Dig. and Supp. § 7174, and cases there cited.

In Lawler v. Minneapolis, St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882, it was held that the failure to provide gates, or a flagman or a signal bell at the crossing of the principal street of a village

of 700 people, was an element to be taken into consideration in determining whether it was negligence to run a train over that crossing at a speed of 50 miles an hour.

In Zenner v. Great Northern Ry. Co. 135 Minn. 37, 159 N. W. 1087, it was held that the jury might find that ordinary care required "either crossing gates, or a flagman, or automatic bells or some other warning device" at the busiest crossing in a city of 10,000 inhabitants, but it was expressly stated that the question whether such precautions were required at country road crossings was not before the court.

In Gowan v. McAdoo, 143 Minn. 227, 173 N. W. 440, the accident occurred at a crossing in the village of Barnum over which all travel to or from the territory west of the village passed. Defective planking rendered the crossing dangerous; the view of a driver approaching it was obstructed, and a finding that the train was running at a rate of 60 miles an hour would have been justified. This court sustained the action of the trial court in submitting to the jury the question whether ordinary care required the maintenance of gates, a flagman or a bell at this crossing, saying that whether the railway company "exercised the required degree of care in view of the location of the crossing, the conditions surrounding its maintenance and the rate of speed at which trains were run over it, was a question for the jury to pass upon."

The court recognized that the crossing in each of these cases was peculiarly and unusually hazardous, and on that ground held that whether ordinary care required the maintenance of gates, a flagman or some other warning device at the particular crossing, was a question for the jury. It was not held, nor intended to be held, that this rule applied to crossings not extra hazardous.

The authorities uniformly hold that, in the absence of a statutory requirement, the failure of a railway company to provide gates, a flagman or other warning device at ordinary crossings, is not negligence, and that the failure to provide such protection at a crossing can be held to be negligence only where the location and surrounding conditions and the manner in which trains are run over it are such as to render it unusually dangerous. Cowen v. Dietrick, 101 Md. 46, 60 Atl. 282, 4 Ann. Cas. 292, and numerous cases cited in note found in 4 Ann.

Cas. at page 294; Folkmire v. Michigan United Rys. Co. 157 Mich. 159, 121 N. W. 811, 17 Ann. Cas. 979, and cases cited in note in 17 Ann. Cas. at page 982.

While the crossing in question was on a much traveled highway and within the corporate limits of the village, there were no houses in its immediate vicinity, and the view of a traveler approaching it was not obstructed by buildings or other obstacles. The railway was a branch line, over which the only traffic was a passenger train, which passed each way daily, and a freight train, which passed in one direction one day and in the opposite direction the next. We are unable to see wherein this crossing differed in any substantial respect from the ordinary crossings on any much traveled highway, and are satisfied that the evidence does not disclose any of those peculiar or unusual hazards which would justify a finding of negligence in failing to maintain gates, a flagman or other warning device at this place.

Plaintiff asserted that the customary warning signals for the crossing were not given. The train always stopped at the station in the village. The engineer and fireman testified that the whistle was blown for the station and also for the crossing, and that the bell was rung. Several residents of the village testified that they heard both the station whistle and the crossing whistle, and one or two testified that they also heard the bell. Against this positive testimony we have the negative testimony of Mrs. McCormick that she heard no warning signals whatever. Her child was crying in the back seat and this may have distracted her attention. However this may be, she evidently gave no attention to the railroad, although perfectly familiar with the crossing, for the train was in plain sight at all times after she reached a point 300 feet from the track, and she remained wholly unaware of its approach until she heard the exhaust from the engine, when she was so near the track that she was unable to stop in time to avoid the collision, although she says she was going at a speed of only 10 miles an hour. The evidence is clearly insufficient to warrant a finding that the signals were not given. Cotton v. Willmar & S. F. Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 Am. St. 422, 9 Ann. Cas. 935; Uggen v. Bazille & Partridge, 123 Minn. 97, 143 N. W. 112; Moore v.

Minneapolis & St. L. R. Co. 123 Minn. 191, 142 N. W. 152, 143 N. W. 326; Plachetko v. Chicago, B. & Q. R. Co. 139 Minn. 278, 166 N. W. 338.

It is conceded that an ordinance of the village prohibited running trains over this crossing at a greater rate of speed than 12 miles an hour and that defendant's train crews were instructed to comply with this requirement. The engineer testified that he had slowed down to 12 miles an hour at the crossing. The estimate of Mrs. McCormick as to the rate of speed is not of much probative value, for she had only a momentary view of the moving train and her estimate could be little better than a guess, but a passenger on the train estimated the speed at 20 or 25 miles an hour. This testimony, together with the fact that the train struck the automobile with sufficient momentum to throw it 25 or 30 feet and to throw parts of it some 200 feet, we deem sufficient to make the question whether the train was run over this crossing at an unusual and unlawful rate of speed a question for the jury.

It appears that Mrs. McCormick was the one whom their father, the owner of the car, told to drive it on this occasion. But from the facts that both Mrs. McCormick and Alice had frequently driven the car, that they went to the village to make social calls, and to arrange a boarding place for a younger sister who expected to attend school in the village, and that Alice drove while going to the village and Mrs. McCormick while returning, defendant contends that they were engaged in a joint enterprise and that the negligence of Mrs. McCormick is imputable to Alice for that reason. The fact that both were going to the village for the same purpose and that each drove the car at times, did not necessarily constitute driving the car a joint enterprise. The management of the car was entrusted to Mrs. McCormick by its owner, and Alice had no authority to control or direct the manner in which Mrs. McCormick operated it. Conceding that the evidence was sufficient to make a question for the jury, it was not sufficient to establish, as a matter of law, that they were engaged in a joint enterprise. Kokesh v. Price, 136 Minn. 304, 161 N. W. 715; 22 R. C. L. 1048.

Defendant contends that the evidence conclusively shows that Alice herself was guilty of contributory negligence in failing to observe the

train and warn her sister of its approach. If it had appeared that she saw the train, and knew, or from the circumstances ought to have known, that her sister was not aware of its approach, or was inattentive or a careless and reckless driver, there might, perhaps, be ground for charging her with contributory negligence as a matter of law, although the question whether one not the driver nor in control of the car is guilty of contributory negligence is almost always a question for the jury. But here the crying child required, and doubtless absorbed, her attention. She was the younger and would naturally place confidence in her older sister to whom her father had entrusted the car. In the absence of knowledge to the contrary, she had the right to assume that her sister would exercise ordinary care and take proper precautions to guard against obvious dangers. She was only required to exercise the degree of care for her own safety which persons similarly situated would ordinarily exercise under like circumstances. She is dead and the presumption is that she was not negligent. On the facts as disclosed by the record the question as to her contributory negligence was for the jury. Carnegie v. Great Northern Ry. Co. 128 Minn. 14, 150 N. W. 164; Kalland v. City of Brainerd, 141 Minn. 119, 169 N. W. 475; Praught v. Great Northern Ry. Co. 144 Minn. 309, 175 N. W. 998.

As there must be a new trial for the errors in submitting to the jury the issues as to negligence in failing to give the usual warning signals, and in failing to maintain gates, or a flagman or other warning device at the crossing, it is proper to add that the train had the right of way and that the court should have given the instruction requested by defendant, to the effect that the men operating the engine, who saw the automobile approaching the crossing, had the right to assume, until the contrary became apparent, that it would stop in time to avoid an accident, and were not required to slacken speed for the purpose of avoiding a collision, until they realized that a collision was imminent if they failed to do so.

For the errors mentioned a new trial must be and is granted.